SYDNEY BAY, WSBA No. 56908
LARA HRUSKA, WSBA No. 46531
RYAN PATRICK FORD, WSBA No. 50628
CEDAR LAW LLP
600 1st Ave., Ste. 330, PMB 96563
Seattle, WA 98104-2205
T: (206) 607-8277
F: (206) 237-9101
E: sydney@cedarlawllp.com
E: lara@cedarlawllp.com
E: ryan@cedarlawllp.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| L.F., a minor, by and through his parents, M.F. and E.F.,<br><br>Plaintiffs,<br>v.<br><br>WENATCHEE SCHOOL district d/b/a WENATCHEE PUBLIC SCHOOLS,<br><br>Defendant. | Case No.: 2:25-cv-00490-SAB<br><br>**PLAINTIFFS' FIRST AMENDED OPENING MOTION** |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. SUMMARY OF EVIDENCE .............................................................................. 2

A. Student was Not Receiving His IEP Services; DBS was No Longer an Appropriate; and Student Languished at Home Absent Special Education Services (September 18, 2021 to January 18, 2022) ...................... 3

B. Dr. Lionel Enns Completed the December 2021 Psychological Assessment and Functional Behavioral Assessment ....................................... 7

C. Student's 2022 Reevaluation and IEP ..........................................................9

D. The District Provided No Services to Student Between December 4, 2021 and May 9, 2022 ......................................................................... 14

E. Student's Placement at Lindens Neurobehavioral Program at the Bancroft School ........................................................................................ 16

F. Student's Placement at New England Center for Children ............................21

G. Due Process Matter ...................................................................................... 21

III. STANDARD OF REVIEW ........................................................................... 28

IV. ARGUMENT .................................................................................................. 30

A. Compensatory Education ........................................................................... 32

B. Whether, by Failing to Provide Transportation as a Related Service and Require Artificial Timelines for Student to Access His Compensatory Award, the ALJ Failed to Provide Adequate Relief .............. 35

C. Whether this Court Should Award Student Related Services and Do Away with the Five-Year Timeline so that He Can Access the Compensatory Award ................................................................................ 39

D. Given the Barriers the District has Created in Student Accessing Compensatory Services, this Court Should Order the District to



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Fund a Trust or Escrow Account with the Cash Value of Compensatory Education and Related Services .......... 42

E. Other Forms of Relief Provided by the ALJ .......... 46

V.CONCLUSION .......... 46

CERTIFICATE OF SERVICE .......... 48



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

# I. INTRODUCTION

Plaintiff L.F. (Student), by and through his parents, M.F. and E.F. (Parents), seeks Judgment on the Administrative Record in Office of Administrative Hearings Cause No. 2023-SE-0162 under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, and 34 C.F.R. Part 300 (IDEA).

The Administrative Law Judge (ALJ) correctly found the District violated the IDEA and denied Student a free appropriate public education (FAPE) from October 5, 2021 through November 16, 2024, and awarded compensatory education. This appeal presents the narrow questions of whether the ALJ erred by failing to award transportation and other services necessary for Student to reasonably access compensatory education and created an arbitrary timeline by which Student must access his compensatory relief.

Parents ask the Court to award transportation, do away with the five-year period to access compensatory education, and monetize the compensatory education and related services in a third-party trust for Parents to independently obtain those services given the District's impediments to access. With the Court's permission, the Parties deferred the issue of Parents' attorneys' fees until the substantive issues addressed in the Parties' respective briefing to this Court. ECF 29.



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

## II. SUMMARY OF EVIDENCE

Student has an extremely complex disability profile, including Autism Spectrum Disorder (ASD) Level 3 (requiring substantial supports), with accompanying speech/language and intellectual impairments; Attention Deficit Hyperactivity Disorder (ADHD), Combined Type; unspecified Anxiety Disorder; Specific Learning Disorder in reading, mathematics, and written expression; Dysgraphia; Dyspraxia; and Dysarthria. Administrative Record (AR)001855; AR2061 (D[1]6 at 24). A 2017 Wenatchee Public Schools (District) reevaluation placed his estimated intellectual ability in the first percentile. AR2041 (D6 at 4). Student requires special education and has an Individualized Education Program (IEP). AR2040 (D6 at 3).

In January 2019, Student began attending a full-day applied behavior analysis (ABA) program at Discovery Behavior Solutions (DBS). AR1855 (FF[2] 4). In March 2021, the District reevaluated Student and continued his eligibility under "Other Health Impairments." *Id.* (FF 3). Sometime after 2019, the District contracted with DBS to provide special education and related gross motor, fine motor, and communication services. AR1856 (FF 4). The District also contracted with licensed

[1] "D" refers to District's exhibits and "P" refers to Parents' exhibits.
[2] "FF" refers to the findings of fact in the Order at AR1854-1929.



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Speech Language Pathologist (SLP) Renee Hill,[3] who assisted DBS with Student's daily teletherapy and has significant experience in speech and oral motor therapy and behavior training. AR1855-56 (FF 4, 5).

### A. Student was Not Receiving His IEP Services; DBS was No Longer an Appropriate; and Student Languished at Home Absent Special Education Services (September 18, 2021 to January 18, 2022)

In the fall of 2021, Student was still placed at DBS. AR1856 (FF 5). The June 2021 IEP governed the time between September 18, 2021 and January 18, 2022. AR1857 (FF 9). The June 2021 IEP provided the following services:

**Services 06/29/2021 - 06/28/2022**

| Concurrent | Service(s) | Service Provider for Delivering Service | Monitor | Frequency | Location (setting) | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| **Related** | | | | | | | |
| No | Gross Motor | PT | PT | 60 Minutes / 1 Times Weekly | Special Education | 06/29/2021 | 06/28/2022 |
| No | Fine Motor | OT Staff | OT | 75 Minutes / 1 Times Weekly | Special Education | 06/29/2021 | 06/28/2022 |
| No | Communication | SLP | SLP | 330 Minutes / 1 Times Weekly | Special Education | 06/29/2021 | 06/28/2022 |
| **Special Education** | | | | | | | |
| No | Social/Emotional | Special Education Staff | Special Education Teacher | 87 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |
| No | Adaptive/Self Help | Special Education Staff | Special Education Teacher | 75 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |
| No | Math | Special Education Staff | Special Education Teacher | 40 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |
| No | Reading | Special Education Staff | Special Education Teacher | 50 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |
| No | Written Expression | Special Education Staff | Special Education Teacher | 15 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |

**Total minutes per week student spends in school:** 1800 minutes per week
**Total minutes per week student is served in a special education setting:** 1800 minutes per week
**Percent of time in general education setting:** 0% in General Education Setting

**Supplementary Aids and Services:**

| Concurrent | Service(s) | Service Provider for Delivering Service | Monitor | Frequency | Location (setting) | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| Yes | Dedicated Aide | 1:1 Support | Special Education Teacher | 360 Minutes / 1 Times Daily | Special Education | 06/29/2021 | 06/28/2022 |
| Yes | Supervision | Support Staff | BCBA | 540 Minutes / 1 Times Weekly | Special Education | 06/29/2021 | 06/28/2022 |
| No | Consultation | Neurological developmental team member | Special Education Teacher | 60 Minutes / 1 Times Yearly | Special Education | 06/29/2021 | 06/28/2022 |

AR1857 (FF 10); June 2021 IEP at AR2020 (D1 at 36). The LRE placement option statement provided: "[t]here may be variation on [Student's] service matrix due the variability of his schedule at DBS due to behavior, instructional programming,

[3] Ms. Hill initially provided him with private intensive therapy. Tr.0529:4-0532:18 (Hill); AR4980-81 (P64 summarizes Ms. Hill's experience and credentials).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

preference assessments, etc." AR1858 (FF 11); AR2021 (D1 at 37). Despite having communication disorders, he is a verbal communicator. Transcript (Tr.)[4]0533:1:18 (Hill). Student became frustrated when pushed to use a device to communicate. *Id.*

In July 2021, Student started exhibiting increased aggressive behaviors. AR2028 (D3 at 3). Accordingly, in August 2021, DBS started Skills Based Treatment (SBT)[5] to respond to Student's increased behaviors to focus on functional communication, but DBS did not complete a Practical Functional Assessment (PFA) *prior* to implementing SBT strategies. AR1858 (FF 12). Historically, Student attended DBS eight hours a day, five days a week. AR2052. As his behaviors declined, his schedule decreased. *Id.*; *see* AR1859-63 (FF 20-33). In an October 2021 Prior Written Notice (PWN), the District noted DBS was "unsuccessful in following [Student]'s IEP." AR2029 (D2 at 4). DBS unilaterally discontinued all of Student's services in Student's IEP to prioritize SBT. AR1862 (FF 28); *see also* AR2032 (D3 at 3). The District was not supervising his special education programming. Tr.0296:17-18 (Father).

Previously, a District occupational therapist went in-person to DBS and provided occupational therapy (OT) services for DBS staff to work on with Student.

---

[4] The citations to the hearing transcripts are the administrative record (AR), followed by the page line numbers. (if the corresponding transcript citation was lines 5-9 on page 000132 of the AR, the citation would read Tr.0132:5-9 (Witness).
[5] Testimony by Ms. Eakle describing SBT. Tr.0374:2-8 (Eakle)



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

AR1858 (FF 14); AR2959-64 (D57 at 8-13). Sometime in mid-September 2021, DBS staff stopped working with Student on OT skills. AR1858 (FF 14). Then, the District OT (Lyndsay Brewer[6]) stopped providing direct services to Student during the first week of October. Tr.0117:13-14 (Brewer). Additionally, all PT services stopped by September 7, 2021 and PT services were never resumed with Student. Tr.0190:13-15, 0200:10-15, 0219:16-23 (Sherer[7]). Between October 18, 2021 and December 3, 2021, according to the District's own records, Student was not receiving OT and PT services. *See* AR2957 (D57 at 5-6) *and* AR2970 (D58).

Between October 6th and October 14th, Student was at home, receiving no services. AR1860 (FF 21). On October 15, 2021, the District held an IEP meeting. *Id.* (FF 22). The PWN from that meeting noted the District would complete a PFA starting the following week. *Id.* (FF 23). Between October 16th and October 29th, Student attended DBS for one to two hours a day of instruction but received no in-person OT and PT services. AR1860-61 (FF 24). This reduced schedule continued between November 1st and November 5th. AR1861 (FF 25). DBS could not safely serve him and at times required up to four staff members to manage him. AR2052 (D6 at 15); Tr.0296:15-19; 0300:23-0301:22 (Eakle); Tr.1317:14-22 (Father). By

[6] Ms. Brewer, a District OT, worked with Student. Tr.0064:14-25 (Brewer).
[7] Dr. Hanna Sherer (née Gustafsson), a District Physical Therapist, worked with Student. Tr.0184:13-24, 0185:11-16 (Sherer).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

November 5, 2021, Student was only at DBS for 1.5 hours a day to exclusively receive SBT services. AR2032 (D3 at 3). At the time, DBS stated Student needed a higher level of BCBA support than DBS could provide, yet the District did not offer such support. AR2033-35 (D3, D4). The dynamic at the clinic with Student became unmanageable. AR2052 (D6 at 15). The Parents requested a reevaluation given the significant behavioral challenges reported by DBS "resulting in a dramatically decreased school day." AR1863 (FF 32); AR2036-37 (D5). The District's own notification for reevaluation acknowledged Student was having decreased "access to all specially designed instruction and related services." AR2036. Students' behaviors only continued to decline. *See* AR2466-2741 (D39, D40); AR4007-4016 (P42); AR2956-59, 2967-72 (D57, D58).

Between November 8th and 26th, Student remained on a reduced DBS schedule without direct OT or PT services. AR1862 (FF 30). On November 29, 2021, Student escalated and received less than an hour of direct services. *Id.* (FF 31). From November 30 through December 2, 2021, he continued receiving reduced direct BCBA/BT services without direct OT or PT services. AR1863 (FF 35). On December 3, 2021, Student began grunting and punching his fist into his hand, injured two staff, and was held for twenty minutes before undressing and urinating on himself. AR1863 (FF 35-36). *See also* AR4013-16 (P42 at 7-10). He remained at the clinic for 250 minutes that day. *Id.* DBS discharged Student that day because it



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

lacked the staffing, resources, and environment necessary to ensure his and staff safety and well-being. AR1864 (FF 37). December 3rd was his last day at DBS. AR1864 (FF 38). He thereafter remained home with Parents and younger brother; Parents were trained in de-escalation and safety care, and Father was trained in speech therapy techniques and assisted Ms. Hill in providing remote speech services. *Id.* From December 4, 2021 through May 9, 2022, Student remained home and received no IEP services. AR1864 (FF 39).

**B. Dr. Lionel Enns Completed the December 2021 Psychological Assessment and Functional Behavioral Assessment**

Lionel Enns PhD BCBA-D, NCSP[8]' completed a re-evaluation in the areas of psychological/behavior, and adaptive skills. AR1866 (FF 45); *see* Dr. Enns' Neuropsychological Report). However, given Student's limited ability to perform baseline tasks, he could not complete Student's cognitive testing. AR1866 (FF 45); AR2060 (D6 at 21). During the evaluation, Dr. Enns interviewed the parents, school staff (Trisha Craig, Annika Bibby, Janise Wertz, and Rindy Eakle[9]), and DBS staff.

---

[8] Dr. Enns is a licensed clinical child psychologist, holds a Doctorate in School Psychology, holds a board-certified Behavior Analyst Doctorate, and is a certified forensic evaluator. AR1865 (FF 40); *see also* AR2038-002076 (D6 Dr. Enns' C.V.)

[9] Ms. Eakle was the District elementary special education coordinator. Tr.000371:13-16 (Eakle). She was previously a behavior analyst and behavior interventionist in the District. Tr.000372:4-9 (Eakle). She never worked directly with Student, only observing him. Tr.0394:18-24 (Eakle).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

AR1865-66 (FF 41, 46); AR2038 (D6 at 1). He also reviewed school and provider records. AR1865 (FF 41).

Dr. Enns diagnosed Student with Autism Spectrum Disorder, Level 3 (requiring very substantial support), with accompanying speech/language and intellectual impairments; ADHD – Combined Type; Anxiety Disorder, unspecified; Specific Learning Disorder with impairment in reading; Specific Learning Disorder with impairment in mathematics; Specific Learning Disorder with impairment in written expression; Motor Coordination Disorder (Dysgraphia); and Dyspraxia/Dysarthria (by history). AR1868 (FF 52); AR2059 (D6 at 22). He explained Autism Level 3 is "the most extreme version of autism with intellectual impairment and speech-language impairment," and described Student as "really, really challenging." Tr.0578:12-20 (Enns). Dr. Enns noted Student had substantial intellectual, social, and communication impairments with severe challenges related to daily living skills, communication and socialization. AR2058 (D6 at 21). He further noted "[t]he most notable aspect of [Student's] functioning was the very high levels of impulsive, hyperactive behaviors any time he was not absorbed with an electric device." AR2048 (D6 at 11). He concluded Student's behaviors seemed driven by two functions: access to attention and favored objects. AR2049 (D6 at 12). Dr. Enns further remarked, and school staff agreed, communication was a primary concern for Student. AR2050 (D6 at 13). During interviews with District staff, they



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

acknowledged to Dr. Enns that it lacked appropriate programming for Student. *Id.*

Dr. Enns concluded a non-clinical environment would not be able to manage Student's behaviors and modify them systematically to guarantee Student's safety and recommended a therapeutic residential treatment center with staff explicitly trained with ASD and intellectual disabilities who exhibited challenging behaviors. AR2061-62 (D6 at 24-25); Tr.0579:4-0580:12 (Enns). Dr. Enns noted that services should include integrated psychiatric, speech/language and ABA support, and that ABA should be 1:1 with the possibility to flex up to 2:1 if needed. AR2061-63 (D6 at 24-26). Dr. Enns further recommended integrated psychiatric care to sort out medication options prior to re-entry to school. *Id.* He also noted that in the interim, the team should be flexible to interim placement and supports including ABA services, SLP support, and psychiatric care. *Id.*

Dr. Enns also completed a Functional Behavior Assessment (FBA) targeting Student's reactive aggression and perseverating behaviors. AR1869 (FF 58); AR2077-90 (D7). In detailing the concerning behavior and considering how to provide educational supports, Dr. Enns expressed that he felt "**strongly that [Student] can only be served in an integrated, highly skilled therapeutic residential setting.**" AR2089 (D7 at 13) (bolded in the original); AR1870 (FF 60).

**C. Student's 2022 Reevaluation and IEP**

The IEP team met on January 18, 2022, to review the evaluation and FBA and



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

develop an IEP. AR2113 (D9 at 1). The resulting PWN stated Student needed residential placement (RTC) because DBS was "not staffed to support [Student]'s needs" and the "school setting would not be able to create an environment that meets his needs and address[es] safety concerns." AR2110 (D8 at 20). Ms. Craig summarized Student's history, including his services at DBS and behavioral changes. AR2098 (D8 at 8). The reevaluation also stated "[a] separate articulation assessment is being completed by Renee Hill, M.A. CCC-SLP[10] as part of this evaluation," and the team noted safety concerns in the home. AR2102 (D8 at 12).

Ms. Eakle's behavior assessment found Student required constant redirection and adult support and recommended ABA programming. AR1870-1871 (FF 62). Because Student's communication challenges created the potential for significant aggression, his programming focused on Functional Communication Training (FCT),[11] and Ms. Eakle recommended providing a mode of communication for him to express his needs. AR1871 (FF 62); Tr.000375:11-19 (Eakle). She developed an FCT plan outlining goals and teaching steps for each goal. AR1871 (FF 64); *see* AR2156-2161 (D10). Ms. Sias's Functional Communication Profile found profound impairments in expressive language, pragmatic/social language, and speech; severe impairments in behavior, voice, and oral language; and moderate impairments in

---

[10] Ms. Hill traveled to Washington to complete the evaluation. Tr.0535:23-24 (Hill).
[11] FCT is tolerance training like SBT. Tr.0375:23-0376:4 (Eakle).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

motor, attentiveness, and receptive language. AR1871 (FF 63); AR2100-2103. These evaluations reaffirmed the importance of communication and behavioral services and supports in Student's programming. *See* AR1870-1872 (FF 62-66); AR2113-2161 (D9, D10). Despite DBS having discharged Student, the need for reevaluation was categorized as "potential program changes." AR2094 (D-8 at 3).

The reevaluation recommended SDI in the areas of cognitive, behavior, social/emotional, and adaptive self-help; related services in fine and gross motor, and communication and BCBA supplementary aids and services. AR2097 (D8 at 6). It did not recommend parent counseling and training as a supplementary aid or service nor did it specifically recommend the related service of recreation or therapeutic recreation for Student. *Id*.

The IEP team also developed Student's IEP at the meeting. AR1873 (FF 72); AR2113-55 (D9). It addressed present levels in cognitive, social/emotional, behavior, adaptive/self-help, communication, fine motor, and gross motor areas, but neither Dr. Enns' FBA nor Student's need for a Behavioral Intervention Plan (BIP). AR2124-45 (D9 at 12-33); AR2123 (D4 at 4), AR2129-30 (D9 at 17-18). In addition to functional academics and significant behavioral, adaptive, and social/emotional support, the IEP identified a substantial need for SLP-designed and monitored communication instruction to increase Student's functional communication. AR2136 (D9 at 24). His baseline was the ability to "combine 3 words/signs to



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

communication in less than 1 out of 10 opportunities." AR2136 (D9 at 24). The IEP included six targeted communication goals, AR2137-38 (D9 at 25-26), one social/emotional goal, two behavior goals, one adaptive goal tied to functional communication, and one related-service communication goal. *See* AR2128-45. It also included numerous communication accommodations, AR2146-48, and daily related services consisting of 90 minutes of SLP communication services, 30 additional minutes of communication services by an SLP or school personnel, and 45 minutes of indirect SLP services. AR2150 (D9 at 38). These provisions highlighted the significant importance of functional communication and communication education for Student. *See id.* The IEP further stated L.F. would "benefit from ESY in the area[s] of cognitive . . .social/emotional. . . behavior . . . [adaptive][12]. . .[and] communication." AR2124, 2128, 2130, 2133, 2137, 2152 (D9 at 12, 16, 18, 21, 25, 40). It is undisputed that the public-school environment could not provide Student an appropriate learning environment. AR2110 (D8 at 20). The District failed to document Parents' numerous requests for home-based services. *See* AR2028-35 (D2, D3, D4); *see* AR2786 ("Parents have reached out and met with school to discuss additional supports that district may provide for client/family.") Further, the IEP was not completed until after subsequent IEP meetings in February

---

[12] The IEP drafter inadvertently writes social/emotional instead of adaptive when discussing Student's need for ESY. AR2133 (D6 at 21).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

2022. *See* AR1875-76 (FF 79-83).

Prior to the completion of the January 2022 IEP, Ms. Hill completed an undated oral motor report because the District's reevaluation only included expressive and receptive language, but not oral motor needs. *See* AR1878 (FF 89); *see* AR3168-3174 (P5); Tr.0537:14-21. (Hill). Ms. Hill proposed 20 updated speech goals. and outlined seven recommendations for Student's new placement to support his speech and language therapy. *See* AR1878-79. (FF 89-91). Among those recommendations included that those working with Student should understand Student was highly social with functional communication limitations. AR1878 (FF 90). She also warned Student could lose skills that were not maintained and his apraxia[13] impacted the consistency of his word approximations and intelligibility, while his dysarthria[14] caused muscle weakness and difficulty in moving his mouth as he intended. *Id.* She highlighted that Student worked best with a therapist who had in-person ST training, not tele-heath and recommended that he receive services from a highly skilled local SLP with the capability to integrate his desire to communicate verbally, with a strong motor background, and a solid skillset in

[13] Apraxia is a speech disorder that impairs planning and processing speech from the neurological side. Tr.0527:14-0528:6 (Hill). SLPs teach students with apraxia to plan, process, and sequence speech to be able to be intelligible. *Id.*

[14] This is a motor-based speech disorder where individuals have muscle related weakness that impacts speech. Tr.0528:7-20 (Hill).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

language acquisition for children with Autism and challenging behaviors. *Id.* (FF 91). She offered to assist in training and consultation with the new SLP at his new placement and recommended that any SLP assigned to Student have taken specific training, such as "A Three Part Treatment Plan for Speech and Feeding," "Taking Your Client with ASD from Non-Verbal to Verbal, and training in "PROMPT" or "A Sensory Motor Approach to Apraxia of Speech". AR1878—79 (FF 91). The report was attached to the IEP provided to Lindens. AR1879 (FF 92).

**D. The District Provided No Services to Student Between December 4, 2021 and May 9, 2022**

After DBS discharged Student, the District provided him no services between December 4, 2021 and May 9, 2022. AR1864 (FF 39) (The District made no attempt to serve him at home and OT and PT providers marked him as "unavailable"); AR2786 (D41); AR2952-56 (D57 at 1-5); AR2965-68 (D58 at 1-3); AR2786 (D41); AR2165-71 (D12, D13, D14); *see* Tr.0080:4-5, 0082:8-12 (Brewer) (testifying she provided no services to Student from the first week in October 2021 until he return at the "very, very end" of the 2022 school year); AR2138-39 (D9 at 26-27) (January 2022 IEP noting Student was "currently at home receiving no school services.")

The District began its search for a RTC, but Student deteriorated at home. *See* AR1872 (FF 67-68); *see also* AR1879-80 (FF 93-100). He engaged in severe aggression and property destruction. Parents continued to log his behavioral



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

challenges, including behaviors such as threatening his five-year-old brother with a knife, stabbing him with scissors, choking him, pinning his mother in a corner, and not allowing her to leave. AR1865 (FF 44); AR2043 (D6 at 6). Given his size, he could not be left alone with his mother and brother, and his father had to cancel work trips. AR1865-66 (FF 43-44); AR2047 (D6 at 10). Student was hospitalized at Seattle Children's Hospital in March 2022. AR1879 (FF 93-96). He was eventually transferred to the Psychiatry and Behavioral Medicine Unit (PMBU), where he engaged in fecal smearing, physical aggression, self-injurious behavior, and property destruction. AR1880 (FF 99). PBMU successfully reduced instances of aggression using a behavior plan and providing 1:1 attention. *Id.* PBMU required the District to have a plan in place for Student prior to his discharge. *Id.* (FF 100).

Finally, on May 5, 2022, an IEP meeting was held to address interim educational programming while the team continued to locate an RTC. AR1880 (FF 101). One hour of services were proposed including transportation and functional communication activities with 3:1 support. AR1881 (FF 102). He started services on May 9, 2022, and was able to participate in those weekly services and even engage in SLP and OT services. *Id.* (FF 104-105). He received only two OT sessions: one in May and June. Tr.0082:19-25 (Brewer). Yet, despite Student qualifying for ESY, services stopped during summer. AR1881-82 (FF 106); *see* AR2124, 2128, 2130, 2133, 2137, 2152 (D9 at 12, 16, 18, 21, 25, 40).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Finally, in July 2022, Student was admitted to a residential therapeutic placement: the Lindens Neurobehavioral Program (Lindens) the residential treatment facility at the Bancroft School (Bancroft) in New Jersey. AR1882 (FF 107). Prior to his placement at Bancroft, he was only receiving SLP services provided directly by his Father. AR1882 (FF 106). District records show he made no progress that school year. AR3030-48, 3198-3215 (P2, P8).

**E. Student's Placement at Lindens Neurobehavioral Program at the Bancroft School**

Finally, on July 20, 2022, Student was placed at Lindens at Bancroft. AR1882 (FF 107). He remained at Lindens until September 4, 2024, when he finally started accessing the adjacent Bancroft school. *Id.* Upon his admission to Lindens, Bancroft BCBA Samantha Fioravanti developed a draft July 2022 BIP that focused on response prevention and redirection. *Id.* (FF 108). The BIP noted an FBA would occur later. *Id.* (FF 109). It did not reference Dr. Enns' 2021 FBA nor did it include his recommendations including functional communication training. *Id.*

During an August 16, 2022 IEP meeting, an IEP and BIP were created. AR1883 (FF 112). Based on Lindens' behavioral data, the August 2022 BIP was supposed to target aggression, disruption, forced urination, and disrobing. *Id.* (FF 114). It noted the BCBA and Linden team would implement the BIP. *Id.* (FF 115).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

The September 2022 IEP[15] included cognitive, social/emotional, behavior, adaptive/self-help, and fine motor goals. AR1884 (FF 116). It noted Student received intense behavioral intervention. AR1884 (FF 117). It included one social/emotional goal on coping skills and three behavioral goals on task completion and activity engagement. *Id.* (FF 118). Despite the IEP noting gross motor concerns, it said that Lindens had no PT available, so "PT services [were] not being recommended." AR1884 (FF 119); AR2258 (D22 at 31). It also noted that the main goal was reduction of dangerous behaviors rather than a large amount of time on related services. *Id.* This further evidenced the District's failure to provide necessary IEP services, such as gross motor services, during his time at Lindens. AR1885 (FF 119); *see also* Tr.1116:11-1117:5 (Wertz). Although the IEP service matrix included communication, it omitted the draft's communication goals and supplemental aids and services, including SLP training, weekly consultation with Ms. Hill, and paid family travel to visit Student. AR1885 (FF 121).

On September 13, 2022, the IEP team met again. AR1886 (FF 124). Student was receiving three 30-minute individual SLP sessions, 60 minutes of group social skills, and three 30-minute social skills groups weekly, with various providers overseeing each group. AR1886 (FF 125). Bancroft still provided no PT. AR1886

---

[15] The September 2022 IEP, creating at the August 16, 2022 IEP meeting, was created for the September 7, 2022 to September 6, 2023 period. AR1884 (FF 116).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

(FF 126). The team maintained reducing dangerous behaviors was the primary goal, and an FBA was underway. *Id.* After the September 2022 IEP was finalized, Ms. Wertz sent Parents a PWN omitting their requests for parent counseling/training and recreation/therapeutic recreation for Student. AR1886 (FF 123).

The team met again in October 2022 to discuss Student's BIP, which targeted aggression, disruption, refusal to transition, forced urination, and disrobing. AR1887 (FF 127, 129). The FBA remained incomplete when the BIP was written. *Id.* (FF 128). The team declined PT in favor of behavior regulation and intensive behavioral support, indicating OT could implement PT recommendations but omitting this from the IEP. *Id.* (FF 127). While Student was at Lindens, Dr. Sherer neither worked with nor was contacted by any PT regarding Student. Tr.0205:13-0206:1 (Sherer).

Student's District case manager (Ms. Craig) did not visit Lindens from July 2022 through June 2023. AR1887 (FF 130). Instead, she relied on quarterly reports and meetings. *Id.* Ms. Hill physically traveled to Bancroft to evaluate Student and even attempted to train their speech therapist who had no training in motor speech. Tr.0533:19-0534:5 (Hill). So, Student "couldn't make progress" because there was not "somebody on-site who [was] effectively implementing all of these programs." Tr.0534:1-5 (Hill); AR1890 (FF 143-144). Yet, there was no staff carryover at Bancroft and Student "got very little time with the speech therapist" and the speech therapist could not get the staff to work with him. Tr.0534:9-17 (Hill). Ms. Hill



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

opined at trial, Student who "needs a lot of reinforcement of skill, a lot of practice of skill, [was not] in [her] opinion not really getting anywhere there." Tr.0534:24-0535:3 (Hill). Student missed numerous speech sessions at Lindens which had a significant negative impact on his progress. Tr.0544:8-18 (Hill).

In February 2023, the District held an IEP meeting. AR1889 (FF 137). The Parents requested that the IEP reflect related services for speech, PT, and OT based on Students' needs. AR1889 (FF 138); AR2278 (D26 at 3). The District declined to change any services. AR1889 (FF 139). The June 2023 IEP also omitted any gross motor skills or PT services despite documented need. AR1893 (FF 153).

In September 2023, Ms. Eakle took over for Ms. Craig as Student's case manager. AR1895 (FF 166). Ms. Eakle attended a few IEP meetings while Student was at Lindens, but her role was only "to take notes" and did not otherwhile discuss Student's BIP with the Linden team. Tr.0384:4-9, 0385:17-0386:4 (Eakle). She did not take part in creating the BIP[16]. Tr.0384:25-0385:2 (Eakle). She testified that no one from the District, including herself or Ms. Wertz, visited Lindens or Bancroft while student was placed there to ensure Student received his IEP services. AR1888 (FF 133); Tr.0427:7-0429:8 (Eakle). AR When the team met to create the September

[16] The records Ms. Eakle received from Bancroft, including the progress reports, were admitted at hearing to show that the District received them, not for the truth of the matter contained within those records. *See* Tr.0388:5-0389:3 (Moving to admit D43 to show the District received the records from Bancroft.)



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

2023 IEP, they eliminated multiple goals and all other goals remained the same. AR1986 (FF 170). With no PT available, the IEP still did not contain gross motor goals or PT services. AR1986 (FF 171). While the IEP noted Student was engaging in OT services and had not met his fine motor goals – the team discontinued Student's OT because of structural changes at Lindens. *Id.* The IEP provided related services of SLP training from Ms. Hill to Bancroft staff as well as consultation by Ms. Hill. AR1897 (FF 174). Yet Ms. Hill was never asked to complete the annual trainings and never completed one. *Id.* It again was devoid of all Parent requests for parent counseling or training or recreational/therapeutic recreation for Student. *Id.* (FF 175). Despite evidence that Student's speech skills had decreased and that his behavior was related to his inability to communicate his needs and wants, the IEP declined to provide more communication services. *Id.* (FF 176).

During a January 2024 IEP Meeting, Parents relayed their ongoing concerns about Student not receiving IEP services and asked for a new placement, noting they had been in contact with two other residential placements New England Center for Children (NECC) and Shrub Oak International School. AR1901-02 (FF 193-194). While Parents highlighted a lot of positives about NECC, they expressed they were open to other schools the District researched. *Id.* The January 2024 IEP noted that Student had not received OT since August 2022. AR1903 (FF 199). The IEP also noted that Student would be unable to receive all his IEP services at Lindens because



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

of his communication, PT, and OT needs. AR1904 (FF 203-204). The January 16, 2024 PWN noted that Lindens was "unable to provide or facilitate the communication services the IEP team is recommending." *Id.* (citing AR2418 (D33 at 28)). Yet, Student remained there for another eleven months until he was discharged on November 16, 2024. AR1914 (FF 247).

**F. Student's Placement at New England Center for Children**

Finally, on November 16, 2024, Student was discharged from Bancroft and transferred to NECC in Massachusetts where he currently resides. AR1905 (FF 205); AR2951 (D56 at 10); AR4817 (P60 at 9).

In January 2025, NECC completed an assessment to determine Student's current skill level that evidenced the regression Student had experienced in cognitive and adaptive skills, fine and gross motor, self-help and communication skills. AR1915-20 (FF248, 252-259). Ms. Hills' and Parents' testimony support the ALJ's findings. *Id.* Moreover, the District documentation supports the same and there was a January 2022 psychological evaluation by Dr. Enns and an FBA that all noted Student's profound communication and language deficits which directly affected his behaviors and his ability to access his education. Tr.0534:1-17, 0544:8-18 (Hill); Tr.1407:19-1409:20 (Father); AR1890 (FF 143-144).

**G. Due Process Matter**

On September 18, 2023, Parents filed a due process complaint and subsequent



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

amended complaints. AR1480-1502 (DPHR); AR01626-50; AR1670-97. The January 16, 2025 prehearing order identified the revised issues and remedies. *See* AR1703-09; *see also* AR714-16 (Feb. 12, 2025 order reassigning the matter to ALJ L'Nayim Shuman-Austin, while maintaining the issues and hearing dates). A six-day hearing was held via Zoom from February through May 2025, with 13 witnesses, 93 admitted exhibits, and 24 issues. AR1768-69; AR1847-1854. During this time, Student, now 15, remained at NECC. AR1855, 1921 (FF 1, 263).

The District's own IEP and witnesses established Student did not receive a FAPE from September 18, 2021 to July 19, 2022. AR3068 (P3 at 20) ("The team recommended that once a facility is chosen the need for compensatory services be addressed."); AR0080:4-0082:20 (Brewer) (detailing she stopped providing OT services to Student in October 2021 and then did not provide any OT services until two sessions in May/June 2022); AR0190:13-15 (Sherer) (Stopped providing PT services to him in September 2021); AR0408:7-17 (Eakle) (Testifying she did not agree with DBS' unilateral decision to decrease Students IEP services). District staff also testified that Student did not receive a FAPE in his LRE at Bancroft from January 1 through November 16, 2024. *See* Tr.1170:18-1171:6, 1172:12-1173:2, 1265:25-1267:21 (Wertz) (Repeatedly conceding that Student did not receive his FAPE or LRE at Bancroft from January 1, 2024 until November 16, 2024). With no factual dispute the District denied FAPE during these periods, the ALJ correctly



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

concluded Parents were entitled to remedies for the denials from September 18, 2021 to July 19, 2022 and January 1 through November 16, 2024. *Id.*

Parents sought remedies for the District's denials of FAPE from September 2021 through November 2024, specifically "[c]ompensatory education and related services … to allow him to obtain the educational benefit that he would have received but not for the District's violation of the IDEA and denial of FAPE." AR1852; AR3068 (P3 at 20) (Student's team recommended compensatory services); AR1787-88, 1798-1801 (Parents argued the import of travel expenses and removal of the District's authority to manage compensatory services).

Ms. Hill, the contracted SLP who successfully worked with Student for several years, lives in Texas and traveled multiple times to support him. Tr.0526:7-16, 0533:19-0534:5, 0535:23-24 (Hill). Based on her extensive professional experience and work with Student, she recommended someone like herself provide:

> intensive therapy with a well-trained motor speech and feeding therapist who can catch him up on all of the things that he's not getting on a daily basis in hopes to build back up his motor system, build back his ability to plan speech movement and then that person needs to be able to really go into his school placement and work with the people that are with him on a daily basis on how to transition what's happening in a clinical setting in a therapy room into his day-to-day activities.

Tr.0541:8:17, 21-25 (Hill).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Risca Solomon[17], a United Kingdom-based (UK)[18] BCBA with extensive experience serving children with complex needs and owner of Skybound Autism Therapies, where she oversees 45 behavior analysts and technicians serving such children, testified at hearing. Tr.0767:21-23, 0798:23-0799:15 (Solomon). Sarah Denison[19], Ms. Solomon's colleague and a BCBA for nearly two decades, also testified. Tr.0824:16-19 (Denison). Although UK-based, both assessed Student in person. Tr.0772:14-16 (Solomon); Tr.0826:17-21 (Denison). Ms. Solomon testified that, given Student's behavioral complexity, misidentifying or missing a behavior's function would impede progress because providers would target the wrong behavior. Tr.0776:2-0778:3 (Solomon). Her work with Student and record review revealed inconclusive functional analysis. *Id.* She found Bancroft's BIP insufficiently comprehensive and observed its data and behavior reports failed to identify the function of Student's attention-seeking behavior. Tr.0783:23-0785:15, 0777:20-3 (Solomon). Although Student desired engagement, he resorted to attention-seeking behavior when Bancroft staff did not understand him. Tr.0779:3-8 (Solomon). Ms. Solomon opined that because providers failed to identify his behaviors' functions, they did not proactively teach replacement skills, a problem compounded by his

---

[17] AR4986-92 (P66 detailed Ms. Solomon's professional experience and education).
[18] She sees clients all over the world. Tr.0770:23-0771:2 (Solomon).
[19] AR4993-96 (P67 detailed Ms. Denison's professional experience and education).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

communication challenges. Tr.0778:6-12 (Solomon). Ms. Denison emphasized the import of skill generalization, yet Bancroft staff could not identify skills they taught Student. Tr.0840:12-0842:6 (Denison). The District provided no evidence of other providers who could provide the extensive support Student required, and Ms. Hill or Skybound Therapies could provide. *See* AR1855-1929 (FF 1-292).

At hearing, Parents provided anticipated costs for compensatory education covering services not provided from September 1, 2021 through November 14, 2024. *See* AR4997 (P68); Tr.1430:1-1432:1 (Father). Father also expressed concern about accessing future compensatory education:

> [W]e're trying to figure out how to help Student achieve educational progress that he did no achieve the past two and a half years because he did not access FAPE. And what we are requesting is a -- funds or resources to access -- that we can easily access to provide services that would help Student make progress. So what we have found is that the school district has not demonstrated that they are able to find professionals that can help Student make progress. They have not shown -- demonstrated an ability to oversee a program that helps Student make progress. We have sought out professionals that have been able to understand Student and make progress with Student. We have tried to access those professionals and have not been able to use past compensatory education funds because of the district's placing roadblocks to that. . . And so we're requesting compensatory funds that we can access easily to implement programs that we have found can actually help him make progress that he has been denied up until now.

Tr.1348:24-1349:22 (Father).

In her Findings of Fact, Conclusions of Law and Final Order ("Order"), the ALJ entered 292 findings across 74 pages detailing Student's educational history,



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

the District's failures, and **most** of Parents' requested remedies, all supported by the evidence. *See* AR1855-1929 (FF 1-292) (emphasis added). She concluded the District failed to materially implement the June 2021 IEP from October 6, 2021 to January 18, 2022, the January 2022 IEP from January 18 to July 20, 2022, and Student's IEPs from July 20, 2022 through November 16, 2024. AR1935-36 (CL[20] 23, 29); AR1948 (CL 91). During the latter period, progress reports did not identify the schedule or frequency of special education services, no District witness could identify the specific services Student received, the March 2023 report provided minimal information about OT, PT, and communication progress, and the January 2024 IEP team acknowledged Lindens could not provide the PT, OT, and communication services in the January 2024 amendment. AR1951 (CL 100-101). District witnesses likewise testified that Student did not receive required communication, OT, and PT services from January 16 through November 16, 2024 and significantly regressed in speech and communication at Lindens. AR1951 (CL 101, 102); *see* Tr.1170:18-1171:6; 1172:12-1173:2; 1265:25-1267:21 (Wertz); *see also* Tr.0534:24-0535:3, 0544:8-18 (Hill).

Because the District offered no corroborating witness testimony, the ALJ correctly concluded the progress reports alone could not establish Student received

[20] "CL" refers to the Conclusions of Law in the Order located at AR1930-1973.



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

the special education services required by his IEPs from July 20, 2022 through November 16, 2024. AR1952 (CL 103). She likewise found the District failed to provide an appropriate educational placement at Linden and to include required PT and OT services in Student's IEPs[21] between July 20, 2022 and November 16, 2024. AR1952 (CL 107); AR1939 (CL 43).

The ALJ did not rule for Parents on every issue; she separately and thoroughly addressed whether each alleged violation of the IDEA denied Student a FAPE. *See* AR1932-73 (CL 1-202). As a remedy, considering Student's residential placement and the services and skills needed to regain those lost between October 5, 2021 and November 16, 2024, the ALJ awarded:

> . . .in the amount of 800 hours at a rate of up to $150.00 per hour to be paid by the District. This award represents an average of 8 hours per week of additional educational services which could reasonably be provided during two consecutive school years, including ESY, to assist the student to regain and maintain skills. Parents shall have the discretion to use the compensatory education hours for whatever educational services they believe the Student requires, after consultation with the Student's service providers. The Parents may choose to use the compensatory education funds at any time of the year at NECC, with contracting providers in Massachusetts, while the Student is at home in Washington State, or at any location they prefer. As it is unclear when the Student will regain and maintain skills, the compensatory education funds shall remain banked and must be used within five years from the date of this order.

[21] September 2022 IEP at AR1941 (CL 54-55); July 2023 IEP Amendment at AR1942 (CL 59); September 2023 IEP at AR1942 (CL 64-65); December 2023 Amendment AR1943 (CL 67); June 2024 IEP Amendment at AR1944 (CL 70-71).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

AR1972 (FF 197—198). The Order is silent on related services necessary to access the compensatory award. *See id.*

## III. STANDARD OF REVIEW

Under 20 U.S.C. § 1415(i)(2)(C), the district court reviews the records of the due process hearing and then, "basing its decision on the preponderance of the evidence, ... grant[s] such relief as the court determines is appropriate." *See Sch. Comm. of Burlington v. Dept. of Educ.*, 471 U.S. 359, 369-70 (1996). The federal courts have the power to "receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "grant such relief as the court determines is appropriate" based on a preponderance of evidence. 20 U.S.C. § 1415(i)(2)(C). The party challenging the administrative decision bears the burden of demonstrating it should be reversed; however, the District had the burden of proof at hearing. *See J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010); Rev. Wash. Code § 28A.155.260(1). "Judicial review in IDEA cases 'differs substantially from judicial review of other agency actions, in which courts are generally confined to the administrative record and are held to a highly deferential standard of review.'" *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) (quoting *Ojai Unif. Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993), cert. denied, 513 U.S. 825 (1994)). The Court can accord deference to the ALJ's factual findings where they are "thorough and careful," and "the extent



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

of deference to be given is within" the Court's discretion. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

The standard of review is dependent on what the Court is reviewing. For reviewing factual findings the standard is clear error, even when they are based on the administrative record. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008). Courts are not free "to substitute their own notions of sound educational policy for those of the school authorities which they review." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 201, 206, 102 S.Ct. 3034, 3048 (1982). For questions of fact, courts must defer to their "specialized knowledge and experience" by giving "due weight" to the decisions of the states' administrative bodies. *Id.* at 206-208. A district court reviews questions of law de novo. *Union Sch. Dist.* , 15 F.3d at 1524; *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987); *see also N.B.*, 541 F.3d at 1207 (questions of law and mixed questions of law and fact are reviewed de novo).

A district court reviews an ALJ's award for relief de novo and thus is "free to determine independently how much weight to give the state hearing officer's determinations." *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1182 (9th Cir. 2009)[22]. When a district court hears an appeal from a state hearing officer,

[22] While the appeal court reviews a district courts' remedy applying abuse of discretion standard, the district court's review of an ALJ's remedy is subject to de



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

it exercises broad discretion to craft relief under 20 U.S.C. § 1415(i)(2)(C). *Id.* at 1182-1183; *S.H. v. Issaquah Sch. Dist.*, 2:21-CV-00137-DGE, 2022 WL 279139, at *8 (W.D. Wash. Jan. 31, 2022); *P.B. v. Thorp Sch. Dist.*, 1:20-CV-03032-SAB, 2021 WL 6275114, at *11 (E.D. Wash. Mar. 29, 2021). "Accordingly, the statute commands that this Court review the evidence and come to its own conclusion about what relief is appropriate." *Avila v. Spokane Sch. Dist. #81*, CV-10-0408-EFS, 2014 WL 12824979, at *1 (E.D. Wash. May 1, 2014).

Here, Parents raise no issue as to the findings of fact, only as to the relief the ALJ failed to award, thus the Court should review this narrow issue de novo.

## IV. ARGUMENT

The IDEA, 20 U.S.C. § 1400 *et seq.*, ensures all handicapped children a FAPE. See 20 U.S.C. §§ 1400(c) (2004), 1412(1) (2015). Its goal is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Districts are obligated to provide a

---

novo review. *Compare Ashland Sch. Dist.*, 587 F.3d at 1182 ("Contrary to Parents' assertion a district court reviews a state hearing officer's award of reimbursement de novo under section 1415(i)(2)(C)") *with Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084-85 (9th Cir. 2008), aff'd, 557 U.S. 230 (2009) ("we review for abuse of discretion the district courts determination of appropriate relief."); *see also Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

program "individually designed to provide educational benefit to the handicapped child." *Longview*, 811 F.2d at 1314 (internal quotations omitted). The Act defines a FAPE to include both special education and "related services." 20 U.S.C. § 1401(9); 34 C.F.R. § 300.101(c)(1); *see also* Wash. Admin. Code § 392-172A-01080. Related services include "transportation ... and other supportive services ... required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(a)(17). Notably, transportation is listed both in the federal and state definitions as the first example of related services, emphasizing its significance as a related service for access to education. *See id.; see also* Wash. Admin. Code. § 392-172A-01155(1).

When a student's appropriate placement is at a RTC not within daily commuting distance of the family residence, transportation costs and lodging near the school are related services that are required to assist that child to benefit from the special education. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1527 (9th Cir. 1994); *see* 20 U.S.C. § 1400(b)(6) ("Congress finds that ... because of the lack of adequate services within the public school system, families are often forced to find services outside the public school system, often at great distance from their residence and at their own expense.") "It is the sole purpose of [the IDEA] to assure that all children with disabilities have available to them ... a free appropriate public education." 20 U.S.C. § 1400(c). Thus, "the language and spirit of the IDEA encompass reimbursement for reasonable transportation and lodging expenses."



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

*Union Sch. Dist.*, 15 F.3d at 1528.

**A. Compensatory Education**

Parents may challenge a district's provision of special education via a due process complaint before an ALJ. 20 U.S.C. § 1415(b)(6)(A); *L.B. v. S.D. Unified Sch. Dist.*, 168 F.4th 1150, 1155 (9th Cir. 2026). When a district denies a FAPE, courts have "broad discretion" to craft "appropriate" relief. 20 U.S.C. § 1415(i)(2)(C)(iii); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238–39 (2009); *Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Compensatory education is an equitable remedy that seeks to make up for 'educational services the child should have received in the first place,' and 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violations….'" *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir 2011) (quoting *Reid v. D.C.*, 401 F.3d 516, 518 (D.C.Cir.2005).

While "[t]here is no obligation to provide day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1497 (9th Cir. 1994). Flexibility rather than rigidity is called for. *Reid*, 401 F.3d at 523-24. Thus, "ordinary IEPs need only provide 'some benefit,' compensatory awards must do more—they must *compensate*." *Id.* at 525 (emphasis in original). In compensating a student, just like



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

how "IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individual assessments." *Id.* at 524. The Court must, considering the student's current social, emotional, and developmental functioning, grant a remedy reasonably calculated to place the student as close as possible to where they would have been, absent the district's denial of FAPE. *Id.* at 524. Thus, in awarding compensatory education, an ALJ must ensure that a student can *actually* access compensatory education based on his individual needs. *Parents of Student W.*, 31 F.3d at 1497; *Reid,* 401 F.3d at 524.

Here, in concluding the District violated the IDEA and failed to provide Student a FAPE between October 6, 2021 and November 16, 2024, the ALJ correctly identified: when the IEPs were not appropriate (AR1939-47 (CL 54, 55, 59, 64, 65, 67, 86)); when the District failed to materially implemented Student's special education and related services from IEPs (AR1935-36, 1948 (CL 23, 29, 91); and that the placement at Linden was inappropriate (AR1952 (CL 107)).

The ALJ awarded Parents compensatory education for the District's IDEA violations that denied Student a FAPE between October 5, 2021 and November 16, 2024. *See* AR1972-73 (CL 195-198). The ALJ reasoned that it was particularly troubling that Student's communication skills significantly regressed after his admission to Lindens in July 2022, despite Dr. Enns' and the District's assessments all noting "that the Student had Dyspraxia/Dysarthria as well as profound



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

impairments in expressive language, pragmatic/social language and speech. . . [and that] [t]he District acknowledged that Ms. Hill's oral motor report recommended supporting and maintaining his communication with oral therapy on a rigorous schedule." AR1972 (CL 195). She also highlighted that District records reflected "the Student's multiple communication difficulties directly affected Student's behaviors and how he accessed his educational environment. . . [and] [d]espite the recommendations in the January 2022 evaluation, the Student did not receive required communication services outlined in his IEPs while at Lindens." *Id.*

The ALJ denied the parents day for day compensatory education, but fashioned compensatory education tied to Student's circumstances to calculate the amount of compensatory education required to place Student in the position she determined he would be in but for the deprivation by the District. AR1972 (CL 197); *see Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717-18 (3d Cir. 2010) (explaining that "compensatory education serves to 'replace[] educational services the child should have received in the first place'"). In doing so, she awarded Parents 800 hours of compensatory education at $150 per hour to be paid by the District. AR1973 (CL 198). She calculated this as eight (8) hours per week of educational services over a two-year period for Student to regain the skills and granted Parents discretion on the type of educational services and the location of the services. *Id.* But she required that the funds be used within five years of the Order. *Id.*



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Here, Parents do not seek to adjust the award of compensatory education, but rather they seek to adjust the timeline by which compensatory education can be accessed and that this Court provide related services of transportation for Student so that the compensatory award is accessible considering his circumstances.

**B. Whether, by Failing to Provide Transportation as a Related Service and Require Artificial Timelines for Student to Access His Compensatory Award, the ALJ Failed to Provide Adequate Relief**

Because the ALJ failed to carefully and impartially consider the evidence in the record and thus failed to provide an appropriate remedy, the ALJ narrowly erred by failing to provide Student with any related services so that Student could access the awarded compensatory education. *See* AR1973 (CL 198). Student is currently placed at NECC and requires substantial support to access his education. AR1921 (FF 263); *see* AR4810-4825 (P60) (NECC BIP and IEP drafted January 2025).

Student's IEP at both Bancroft and NECC noted Student required special transportation and included Parent visits to residential, paid for by the District. *See* AR2307-09 (D27 at 28-30) (The June 2023 IEP detailing that the District would provide eight annual trips to include "5 days and 4 nights in a hotel, rental car, mileage to and from the airport, and meals provided WSD rates for mom, dad, and sibling."); AR2384 (D32 at 23) (December 2023 IEP providing for the District to pay for six Parent visits to the residential placement and two visits for Student to travel home in which the District would "reimburse coach airfare for both parents []



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

to accompany the student on his flights home and back to Bancroft, one night of hotel lodging per each trip, and the student's airfare."); AR2414 (D33 at 24) (January 2024 IEP continuing to provide special transportation for Parents and Student). The District acknowledges in its post-hearing brief it was providing transportation in Student's IEP. AR1819, 1824 (District's post-hearing brief). The District argued Student's transportation was a required related service for Student to be provided FAPE after June 2023 in order for "Student to practice generalizing his skills across other environments while also practicing skills when other variables were present in the environment."). AR1831. The ALJ also acknowledges the transportation contained in Student's IEPs. *See* AR1939 (CL 41). Later in her decision, she cites the definition of related services, including transportation. *See* AR1940 (CL 46). The ALJ was keenly aware of the related services of transportation required for Student to access services as evidenced in her findings and decision. *See* AR1939-1-40 (CL 41, 46); *see also* AR1885 (FF121) *and* AR1926 (FF286).

She points to Ms. Hill's report detailing the need for in-person training and support with someone like Ms. Hill. AR1878 (FF 91). And that the services provided in the IEP were direct in-person services by individuals who were working with Student. *See* AR1857-62 (FF 10-11, 14, 17, 19-21, 24-25, 30); AR1870 (FF 59) (citing to Dr. Enns' recommendation that Student receive "direct, continuous, expert adult supervision in the same therapeutic space… as well as direction instruction



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

and controlled situation in which he might practice social skills."); AR1871 (FF 62-63) (detailing Ms. Eakle's and Mrs. Sias assessments that Student should be provided a mode of communication allowing him to communicate his needs given his profound speech impairments, limited attention span, and attentive and receptive language skills); AR1942-1943 (FF 57, 61). For example, Student was to receive direct SLP services and Ms. Hill supported Student's OPT and provided virtual consult. *See* AR1942-1943 (FF 57, 61). When District failed to ensure Student was getting his direct services in person, such as his SLP, PT, and OT, the ALJ correctly held the District accountable. AR1941-43 (FF 54-55, 59, 65, 67). Yet, she failed to apply that same logic when crafting her relief. *See* AR1972-73 (CL 197, 198).

In doing so, the ALJ was neither thorough or careful with respect to the relief she granted because she failed to account for the necessary transportation that Student or his providers require so that he can utilize "the compensatory education funds at any time of the year at NECC, with contracting providers in Massachusetts, while Student is at home in Washington State, or at any location." AR1973 (CL 198). The Court "treat[s] a hearing officer's findings as 'thorough and careful' when the officer … writes a decision contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions." *J.W.*, 626 F.3d at 440-41. "Neither the duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion can ensure that the ALJ was 'thorough and careful.'"



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

*Id.* at 440. An ALJ decision is not thorough and careful where it fails to "address all issues and disregard[s] some of the evidence presented at the hearing" or fails to consider the record as a whole. *M.C.*, 858 F.3d at 1195; *Forest Grove Sch. Dist. v. Student*, 665 Fed. App'x 612, 613-14 (9th Cir. 2016). The reviewing Court should "independently review the testimony in the record that [the ALJ] failed to consider." *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 943 (9th Cir. 2007). Here, the ALJ failed to review the testimony and consider its own findings regarding his need for transportation as a related service so that he could be provided direct, in-person compensatory education, as she correctly noted he had needed while at his residential placements. *See* AR1857-62, 1876-77, 1885-86, 1892-93 (FF 10-11, 14, 17, 19-21, 24-25, 30, 84-86, 120-121, 125 151-153).

Given that related services are an equitable remedy fashioned to enable students to access special education services, it logically flows that if a student requires related services to access services, then an ALJ must order related services so that Student can *actually* access the compensatory services. Awarding compensatory education that a student cannot access is an absurd result and would not "place disabled children in the same position they would have occupied but for the school district's violations of the IDEA." *See R.P.*, 631 F.3d at 1125. Thus, failing to provide necessary related services is contrary to providing an equitable remedy to a Student with disabilities following a denial of FAPE. *Id.*



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Similarly, the ALJ was neither thorough nor careful when she acknowledged the lack of clarity as to when Student would be able to regain and maintain skills yet required Student to forfeit unused compensatory relief after five years. AR1915-21, 1924 (FF 248-263, 278); AR 1973 (CL 198). Given the lack of clarity, it was neither thorough nor careful to place a temporal limitation on Students use of his compensatory relief and the ALJ failed to consider the record as a whole. *Id.*

### C. Whether this Court Should Award Student Related Services and Do Away with the Five-Year Timeline so that He Can Access the Compensatory Award

This Court should award Student related services of transportation and do away with the five-year timeline so Student can fully access his compensatory education. The District engaged in multiple IDEA violations between October 6, 2021 and November 16, 2024. AR1935-1936, 1939-1948, 1952 (CL 23, 29, 54, 55, 59, 64, 65, 67, 86, 91, 107). Thus, the ALJ awarded Student "compensatory education in the amount of 800 hours at a rate of up to $150 per hour to be paid by the District." AR1972-73 (FF 197-198). While the award permits Parents to have broad discretion to use the award for educational services they deem necessary, the Order is silent as to an award for the related service of transportation so Student can access those services; thus, rendering the compensatory services mostly useless to date. *See id.* The compensatory services must be accessible "at any location", as the ALJ contemplated. AR1973 (CL 198). Thus, this Court should award related



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

transportation services for Student and/or the providers to come to him so he can access the compensatory education to put him in the place he would have been but for the District's violations. *See R.P.*, 631 F.3d at 1125.

This should include the cost of flying and lodging for Ms. Hill from Texas to provide direct intensive speech services, given her extensive experience with Student and his areas of need. *See* Tr.0526:7-16, 0533:19-0534:5, 0535:23-24, 0541:21-25 (Hill); *see also* AR2417 ("WSD will pay for Renee Hill to be onsite at Bancroft for 2 days including airfare hotel and training services."). This should include travel for Ms. Solomon or Ms. Denison to provide direct services to Student in Massachusetts or at their program in the United Kingdom. *See* Tr.0768:23-9769:15 (Solomon). Given the intensive nature of the services the ALJ recognized Student requires, it was critical that the ALJ provide a method by which Student could access individuals with the appropriate education, training, and experience. *See* AR1938 (CL 37) (concluding that Dr. Enns' "evaluation and the January 2022 Functional Communication Profile noted "Student required constant redirection and adult attention to prevent him from perseverating or escalating aggressive behaviors."); AR1938 (CL 43) (the District "failed to include required PT and OT services" in multiple IEPs); Tr.1170:18-1171:6, 1172:12-1173:2, 1265:25-1267:21 (Wertz) (Repeatedly conceding Student did not receive his FAPE or LRE at Bancroft from January 1, 2024 until November 16, 2024). *see* Tr.0541:8:17 (Hill).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

In fact, Student has been able to previously travel to Texas to access services from Ms. Hill, thus, allowing him to access in-person speech therapy services and make progress, which is exactly the type of access this remedy was intended to provide but failed to thoughtfully operationalize. *See* Tr.0541:8-25 (Hill); *see* Tr.1324:17-1325:3 (Father) (Testifying that Student flew down to Ms. Hill in 2019 for an evaluation and intensive therapy time). Thus, Student should be awarded related service of transportation to provide the cost of the transportation (such as the flight and any car rental or ride-share), lodging, and reasonable meals so that the providers could travel to Student or for Student to travel to them for him to access his compensatory award. *See e.g.* AR5020-0568 (P69) (costs of receipts for travel, car rental, lodging, and meals – including those in Texas). Alternatively, the Court could also Order that Parents can seek reimbursement for round trip economy ticket air travel for flights booked to access services as well as other related costs.[23] Parents would submit receipts to District's accounting office via email or a method designated by the Court within 30 days of this Court's order and the District would be required to issue a reimbursement check no later than 30 days upon receipt.

Thus, this Court should award reasonable transportation, including travel, mileage, lodging and the reasonable meals, as a related services that permits Student

[23] It costs $405.00 to file a civil action in the U.S. District Court for the Eastern District of Washington.



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

to access his compensatory award. Absent an award for related services, Parents must either forego otherwise appropriate compensatory services requiring travel or take the unprecedented measure of personally financing the transportation and related costs necessary to access the compensatory relief awarded for the District's denial of FAPE. *See* Tr.1349:10-22 (Father) (Testifying Parents have taken extensive time off work and expended funds to provide Student special education.)

The Court should also do away with any requirements that dictate that Student access his compensatory education by an arbitrary end date given the uncertain nature as to when Student will be able to access all of his compensatory relief. *J.W.*, 626 F.3d at 440-41; *Forest Grove Sch. Dist.*, 665 Fed. App'x at 613-14; AR1915-21, 1924 (FF 248-263, 278); AR 1973 (CL 198). If the Court declines to do so, Parents' request that Student have five years of access to his compensatory relief with the benefit of transportation, lodging, and the like, as related services.

### D. Given the Barriers the District has Created in Student Accessing Compensatory Services, this Court Should Order the District to Fund a Trust or Escrow Account with the Cash Value of Compensatory Education and Related Services

In special education cases, Courts have used special needs trusts (SNT) or escrow accounts to distribute funding for compensatory education. *See, e.g., J.R. v. Ventura Unified Sch. Dist.*, No. 2:22-cv-02717-HDV-MAR, 2024 WL 5339859,



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

(C.D. Cal. Dec. 23, 2024)[24] (ordering the district fund a SNT so the student could utilize the $510,960 awarded for compensatory education)*; J.J v. Rocklin Unified Sch. Dist.*, No. 2:19-CV01404-KJM-DB, 2020 WL 363908, at *4 (E.D. Cal. Jan. 22, 2020) (approving settlement, including funding of a SNT in the amount of $280,630.52 and payment of fees for an estate planning attorney to establish the trust, not to exceed $4,500); *D.C. v. Modesto City Sch.*, No. 1:22-CV-01481-HBK, 2023 WL 6060044, at *3 (E.D. Cal. Sept. 18, 2023) (approving settlement awarding $125,000 into a SNT and permitting counsel to use up to $6,000 to establish a SNT); *J.C. v. Vacaville Unified Sch. Dist.*, No. S-05-0092-FCD-KJM, 2006 WL 2644897, at *7–9 (E.D. Cal. Sept. 14, 2006) (awarding the "present market value" of the compensatory education services, to be "paid directly into a special needs trust."); *see also Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 Fed. Appx. 411, 415 (2d Cir. 2010) (Ordering the District to open and maintain an escrow account for the parents to pay for compensatory education) *and Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 660 (2d Cir. 2020) (After placing a student's compensatory award was placed in an escrow account, the Second Circuit determined it was a violation of IDEA for the escrow agent to unilaterally decrease reimbursable services and require the parents to pay for escrow account maintenance costs).

---

[24] This case was overturned on a narrow and unrelated statute of limitation issues. *J. R. v. Ventura Unified Sch. Dist.*, 173 F.4th 1039 (9th Cir. 2026).



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Here, the ALJ expressly granted Parents the discretion with respect to utilization of the compensatory award. *See* AR1973 (CL 198). However, the District maintains the purse strings and still retains discretionary control over how Parents' chosen expenditures will be paid. *Id.* The record demonstrates that the District has a history of creating barriers to compensatory education owed to Student. Tr.1348:24-1349:22 (Father). These concerns are not hypothetical. The Parents had been unable to access successful providers using prior compensatory education funds because of District "roadblocks" Tr.1349:11-14 (Father). These administrative barriers extend beyond compensatory education. Ms. Hill remained unpaid for approximately six months after providing IEP services, requiring the Father to personally advance her $10,000 to prevent disruption of IEP services. Tr.1350:5-15 (Father). When the District failed to follow through on Student's DBS services, Parents had to seek further resolution to get implementation on what was already agreed. Tr.1350:16-24 (Father). Thus, allowing the District to maintain control defies the ALJ's intent and risks Student continued inaccessibility to the compensatory award. *See* AR1973 (CL 198). To minimize barriers to Student's compensatory awards, this Court should place the award into a special needs trust, an escrow account, or another third-party account, for Parents to obtain educational and related services without having District barriers at each step of the way.

For compensatory education, the Court should order that 800 hours at $150



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

per hour (**$120,000**) be placed in a special needs trust or escrow account. *See* AR1973 (CL 198). The Court should also award *at minimum* **$86,048.44** for related transportation and lodging. Even at an intensive 40 hours per week, Student would require 20 weeklong visits to access the full 800 hours. *See* AR1972-73 (FF 197-198). Because Student is currently placed at an RTC, however, that schedule would remove him from his existing educational program, requiring additional time to access the compensatory education. AR1921 (FF 263).

Based on the calculations from Parents own travel to and from NECC includes: the round trip price between Wenatchee and Boston for one person in coach plus taxes and fees at $1,011.20 (AR5029 (P69 at 10); the price of one night in a hotel in Marlborough, Massachusetts at $201.20 (AR5039 (P69 at 20); the price of a rental car in Massachusetts for $207.72 per day, *see* AR5047 (P69 at 28); plus the reasonable cost of food $11-$30 per meal (for their meals a day), AR5050-69 (P69 at 31-50). Thus, for a trip where a provider is coming out to work with Student for a full week of working with him plus days to travel, it would cost at minimum $4,302.44 for travel for the week: $1,011.20 (x 1 round trip) + $201.20(x 6 nights)+ $207.72 x (7 days)+ $30 (3 meals x 7 days). *See id.* If a provider came to Student at NECC or another location and this occurred over a minimum period of 20 visits with providers that at minimum an additional $86,048.44 in expenses for the providers to access Student. *See id.* This does not include if Student were to travel for services,



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

which would require a two-person transport (historically his parents) and the cost of the travel and lodging for that transport. *See* AR5050-69 (P69 at 31-50).

Thus, at a minimum, this Court should order that the District place **$206,048.44** ($120,000 in compensatory education and $86,048.44 for related services) in a SNT or escrow account, with $6,000 available to establish and maintain the account.

### E. Other Forms of Relief Provided by the ALJ

This Court should otherwise affirm the relief granted by the ALJ. *See* AR1970-73 (CL 188-201). The equities favor Student for the relief already and obtained and relief now sought. *R.P.*, 631 F.3d at 1125; AR 1885, 1926 (FF 121, 286); AR 1939-40, 1972-73 (CL 41, 46, 197-98).

## V. CONCLUSION

For the foregoing reasons, L.F. respectfully requests this Court should award the relief requested herein.

//

//

//

//

//

//



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com

Submitted this 16th day of October 2026.

**CEDAR LAW LLP**

*s/ Sydney Arizona Bay*
Sydney Bay, WSBA No. 56908
Lara Hruska, WSBA No. 46531
Ryan Patrick Ford, WSBA No. 50628
600 1st Ave, Ste 330, PMB 96563
Seattle, WA 98104
Tel:(206) 607-8277
Fax:(206) 237-9101
E: sydney@cedarlawllp.com
E: lara@cedarlawllp.com
E: ryan@cedarlawllp.com
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury under the laws of State of Washington that on this day the undersigned caused to be served in the manner indicated below a copy of the foregoing document directed to the following individual(s):

Sara C. Johnson, WSBA No. 34529
Susan Winkleman, WSBA No. 49544
PACIFICA LAW GROUP LLP
401 Union St., Ste. 1600
Seattle, WA 98101-2668
Tel: (206) 245-1700
Fax: (206) 245-1750
E-mail: sarah.johnson@pacificalawgroup.com
susan.winkleman@pacificalawgroup.com
*Attorneys for Wenatchee School District*

**_____Via Messenger**
**_____Via Facsimile**
**_____Via U.S. Mail, postage prepaid**
**_____Via Overnight Mail, postage prepaid**
**_X___Via Court E-Service or Email**

Dated this 16th day of October, 2026.

Amy Schley, Paralegal / Legal Assistant



CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277 | Fax: (206) 237-9101
info@cedarlawllp.com