Sarah C. Johnson, WSBA #34529
Susan Winkelman, WSBA #49544
PACIFICA LAW GROUP LLP
1400 Union Street, Suite 1600
Seattle, WA 98101
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| L.F. A MINOR, BY AND THROUGH HIS PARENTS, M.F. and E.F.,<br><br>Plaintiffs,<br><br>v.<br><br>WENATCHEE SCHOOL DISTRICT d/b/a WENATCHEE PUBLIC SCHOOLS,<br><br>Defendant. | No. 2:25-cv-00490-SAB<br><br>DISTRICT'S RESPONSE AND OPENING BRIEF |



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I. INTRODUCTION

Plaintiffs M.F. and E.F. ("Parents") bring a limited appeal to the Administrative Law Judge's ("ALJ's") remedy award that was issued following a comprehensive administrative hearing. In her decision, the ALJ determined that the Wenatchee School District ("the District") was required to provide 800 hours of compensatory education services to the minor student at issue ("L.F.") and provided Parents five years to access the ordered services. The ALJ's decision was consistent with the IDEA and allowed L.F. to meaningfully access the ordered compensatory services. Without identifying any argument to the contrary, Parents now ask this Court to second guess the ALJ's order and require the District to expend public funds to fly and accommodate out-of-state and international private providers to deliver compensatory education services to L.F. Having brought this claim in the first instance, Parents fail to establish that such expenses are authorized under the IDEA, let alone that there not local providers competent to deliver the ordered compensatory services such that the travel expenses Parents seek could somehow be deemed necessary for L.F. to benefit from his compensatory education award. Parents further contend that the ALJ erred in establishing a five-year timeline to access the compensatory services, but they fail to offer any meaningful argument to support such a claim. Finally, Parents ask the Court to monetize the ALJ's



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

compensatory education remedy and place over two hundred thousand dollars of public funds in a trust account over which the District has no control. The IDEA prohibits an award of monetary damages, and Parents fail to identify any legal authority that would support their request for a trust account here. Parents have failed to establish the ALJ erred in her remedy award, and this Court should reject their efforts to expand the scope of appropriate remedies under the IDEA.

## II. FACTS

### A. L.F.'s Background in the District[1]

L.F. was initially evaluated and found eligible for special education services when he was three years old. AR 2040. The District reevaluated L.F. when he was in first grade and found that his intellectual ability fell within the 1st percentile range and that he required specially designed instruction ("SDI") in social-emotional, adaptive, and academics. AR 2041. In January 2019, when he was in fourth grade, Parents placed L.F. at Discovery Behavior Solutions ("DBS"), a private agency that

1 The relevant time period began on September 18, 2021. See AR 1848-52. Information prior to then is provided for background and context.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

provided applied behavior analysis ("ABA").[2] *Id.* Parents also contacted Renee Hill, a Speech Language Pathologist ("SLP") in Texas, to conduct an evaluation and provide virtual support with oral motor issues related to feeding and speech. AR 530-31 (Hill). The District and Parents subsequently entered into a settlement agreement, under which the District agreed to contract with DBS to provide L.F.'s special education services. AR 1342 (Father). At DBS, L.F. received intensive ABA support from behavior technicians ("BTs") overseen by an on-site board-certified behavior analyst ("BCBA"). AR 2098. The District also agreed to contract with Ms. Hill to provide virtual oral motor services. AR 1856 (FF 4).

In June 2021, L.F.'s individualized education program ("IEP") team developed a new annual IEP for him. AR 1985-2025. At that time, L.F. was in sixth grade. AR 1987. The team reported that L.F. required an alternative augmentative communication ("AAC") device to assist with communication. AR 1989. The team offered SDI in social-emotional, adaptive/self-help, and academics, as well as occupational therapy ("OT"), physical therapy ("PT"), and speech as related

---

2 ABA is an evidence-based approach to improving behavior and skills related to impairments associated with Autism and other developmental disabilities. Wash. Admin. Code § 182-31A-0200.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

services. AR 2020. The team agreed that L.F.'s OT and PT would be delivered by District staff through collaboration with the interdisciplinary team, consultative services, education/training of school personnel, environmental modifications, and direct services at DBS. AR 2008, 2011; AR 158-59 (Brewer); 187-89 (Sherer). The IEP also offered 1:1 support, BCBA supervision, and a yearly neurological developmental consultation. *Id.* The team agreed that L.F.'s IEP would continue to be implemented at DBS and that Ms. Hill would provide L.F.'s speech services virtually.[3] AR 2020-21; AR 3168.

**B. L.F.'s Behaviors at DBS Increase in July 2021**

In July 2021, L.F. began to exhibit noncompliant and aggressive behaviors at DBS due to a medication change. AR 2028. DBA began providing skills-based treatment in August 2021 to support L.F. with using functional communication in place of maladaptive behaviors. AR 2028-29. In October 2021, L.F. had behavioral incidents on two consecutive days that resulted in property destruction, including broken windows, and physical harm to staff. AR 2029, 2603-09. During the

[3] Parents claim L.F. attended DBS for eight hours per day, but his IEP provided 1800 minutes per week, or six hours a day, of services at DBS. *Compare* ECF No. 30 at 7, *with* AR 2020.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

incidents, DBS was required to physically restrain L.F. to maintain his safety and the safety of others. *Id.*; AR 2958.

On October 15, 2021, L.F.'s IEP team met to discuss the significant increase in behaviors. AR 2028-29. Parents reported his behaviors had increased following a medication change and, because he had grown and become stronger, his most severe outbursts had become more intense and were becoming unsafe to manage. AR 2028. DBS reported that L.F. was exhibiting frequent maladaptive behaviors that required physical management to ensure the safety of the facility and that they brought in a second BCBA to provide additional support. AR 2029. DBS presented an updated behavior plan to address the safety concerns, and the IEP team agreed that DBS would complete a behavioral assessment and that a District BCBA would observe and collaborate with DBS. AR 2028. DBS also informed the District that L.F.'s direct OT and PT services needed to be put on hold due to his extreme behaviors.[4] AR 81-82 (Brewer); AR 2969. Following the meeting, District staff met to discuss

[4] Parents incorrectly state that "all PT services stopped by September 7, 2021." ECF No. 30 at 8. Direct PT services were provided until DBS put them on hold due to the October 2021 behavior escalations. AR 2969-71.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

a plan for L.F.'s direct OT and PT services. AR 2957, 2969. They also toured a possible alternative location to deliver the OT and PT services. *Id.*

On November 5, 2021, L.F.'s IEP team met to review the results of the behavioral assessment. AR 2032-33. At that time, L.F. was attending DBS on a reduced schedule and was working in a 1:1 setting while present. AR 2032, 2622. DBS planned to increase his schedule as he demonstrated the ability to attend without engaging in aggressive behaviors, but DBS staff were unsure if L.F. would be able to attend more than three hours a day. *Id.* DBS also expressed that L.F. might require more support than DBS staff could provide. AR 2032-33. Due to the increased behaviors and significant change in programming, the District proposed a reevaluation to determine L.F.'s needs and help inform a potential change in his educational placement. AR 2033.

On November 15, 22, and 29, 2021, the District contacted DBS about resuming L.F.'s direct OT and PT services. AR 2956, 2968. DBS explained that L.F. was making progress, but they felt it was premature to reintroduce OT and PT. *Id.*; *see also* AR 82 (Brewer) (explaining that they followed up and DBS continued to tell them therapy was not appropriate at that time). On November 29, 2021, L.F. engaged in physical aggression towards DBS staff and was placed in physical holds to ensure everyone's safety. AR 2772. On December 3, 2021, L.F. engaged in



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

physical aggression toward DBS staff, including hitting, biting, and kicking, and disrobed and urinated on the floor. AR 2783, 2787. DBS discussed the incident with Parents and expressed concern that they did not have the staffing, resources, and environment to ensure the safety of L.F. and DBS staff. AR 2786. Parents stated that they were looking into residential settings. *Id.* Following the discussion, Parents withdrew L.F. from DBS. AR 1873 (FF 71); AR 2098.

### C. District Initiates a Reevaluation in November 2021

On November 12, 2021, the District initiated its reevaluation of L.F. AR 2092. Based on Parents' request, the District agreed to contract with Dr. Lionel Enns, a private psychologist, to complete portions of L.F.'s reevaluation. AR 2038-76. Dr. Enns interviewed Parents, observed L.F. in the home, administered various assessments, and completed a functional behavioral assessment ("FBA"). AR 2038-90. Parents reported that L.F. engaged in aggressive behaviors at home, including threatening his sibling with a knife, stabbing his sibling in the head with scissors, choking his sibling, pinning Mother in a corner and threatening to harm her if Father left the home, and grabbing Mother to prevent her from leaving. AR 2043. Mother reported that safety was a persistent concern, and that L.F.'s sleep challenges added to the family's personal stress and strain due to fatigue. AR 2045. Parents reported that L.F.'s use of his tablet had become a significant challenge and that it was very



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

difficult to remove once he found violent or sexual content. AR 2045. They explained that puberty was an added complication, that his aggression had become more pronounced, and that they were concerned for their family's safety. *Id.*

Dr. Enns found that L.F.'s cognitive abilities reflected a severe intellectual disability and that he demonstrated severe challenges in daily living skills, communication, and socialization. AR 2058. He determined that L.F. met the criteria for autism spectrum disorder ("ASD") requiring significant support, with accompanying intellectual and speech impairments, attention deficit hyperactivity disorder ("ADHD"), and anxiety disorder. AR 2059. He opined that L.F.'s recent behavior at DBS suggested his size and irritability had transformed what had been manageable behaviors into a more acute condition. AR 2060. Dr. Enns felt the school team possessed a high level of expertise and that the District "should be lauded" for funding three BCBAs, but that it was unlikely a non-clinical environment could safety manage L.F.'s behaviors. *Id.* He cautioned against ramping up a school-based program until L.F.'s behaviors stabilized. *Id.* Dr. Enns recommended a therapeutic residential treatment center ("RTC") with staff trained in working with students with ASD and intellectual disabilities who exhibited challenging behaviors. AR 2061. He strongly recommended psychiatric care to assess medication options prior to reentry to school. *Id.* Dr. Enns reported that Bancroft, New England Center for Children



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

("NECC"), Melmark, and the May Institute could provide the level of support he recommended. *Id.* Dr. Enns noted that it was unlikely an RTC could be secured in a timely manner. AR 2063.

Rindy Eakle, a District BCBA, observed L.F. at home to further evaluate his behaviors. AR 2099-2100. Parents reported that they had installed a camera above the front door due to the increase in L.F.'s elopement out of the house, including an instance in which he was found in a neighbor's home and refused to leave. AR 2099. They reported that kitchen items were locked up because access to them could result in a behavioral escalation. *Id.* Based on her observation, previous reports, and Parents' input, Ms. Eakle found that L.F. needed an engaging, safe, highly structured and routine-based environment with an ABA program. AR 2099-2100. She recommended the program focus on functional communication, emotional regulation, simple de-escalation or calming strategies, pre-vocational skills, and functional academics. AR 2100.

Lyndsay Brewer, a District occupational therapist, found that L.F. exhibited fine motor delays that impacted his ability to successfully participate in classroom activities. AR 2103-05. Hanna Sherer, a District physical therapist, found that L.F.'s gross motor impairments impacted his ability to participate with peers in educational activities and safely navigate school facilities. AR 2107-09. She recommended PT



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to address his ability to safely participate in the school environment. *Id.* Katrina Sias, a District SLP, evaluated L.F.'s communication skills and found that he communicated through a combination of verbal output (one- or two-word utterances), gestures/signs, facial expressions/body language, pointing, and use of an AAC device. AR 2100-03. She recommended functional communication skills instruction and increased use of his AAC device to help him communicate. AR 2103.

Ms. Hill also prepared an oral motor report, which included a summary of her virtual sessions with L.F. and his progress on the goals she had been addressing with him. AR 3168-74. The oral motor goals included maintaining lip closure against resistance, drinking from a therapeutic straw, blowing a horn in an upright seated position, and chewing on his back molars. AR 3171-74. Ms. Hill opined that L.F. required a local SLP who could work alongside a BT to support his communication throughout the day. AR 3170. She reported that once L.F.'s new placement was determined and an SLP was in place to provide direct services, she could assist with training and consulting with the SLP regarding his motor speech program. *Id.*

Following completion of the reevaluation, the evaluation team met with Parents to review the results. AR 2091-2113. The team agreed that L.F. was eligible for special education services and recommended SDI in cognitive, behavior, social/emotional, and adaptive/self-help, as well as related services in fine motor,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

gross motor, and communication, and BCBA support. AR 2095-96. The team agreed with Dr. Enns' recommendation for an RTC. AR 2110. They agreed that once one was selected, they could address the need for compensatory services. *Id.*

**D. Development of L.F.'s January and February 2022 IEP**

In January and February 2022, L.F.'s IEP team met four times to develop a new annual IEP for him. AR 2113-53, 2164-71. The team offered SDI in cognitive, behavior, social-emotional, and adaptive/self-help, along with PT, OT, and communication services. AR 2150. The team also offered 1:1 support, BCBA consultation, a neurological developmental consultation, indirect speech/language services[5], and parent training for behavioral supports and program continuity. AR 2148, 2150. The team proposed placement in an RTC and agreed the IEP may need to be adjusted based on the RTC selected, L.F.'s functioning at the time of the placement, and the priorities determined by the team.[6] AR 2151, 2153.

---

[5] Indirect speech/language services included collaboration with the school team, designing/adapting curriculum, and training school staff on communication strategies. AR 2136.

[6] Parents claim the District failed to document their numerous requests for home-based services. ECF No. 30 at 15. To support their claim, they cite a note in DBS's



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Based on the placement determination, the District undertook an extensive search for an RTC that could meet L.F.'s needs and had capacity to serve him. AR 881-88 (Craig); AR 2836-40. The District developed a chart to assist in the search and a list of questions for each RTC, including ones Parents requested. *Id.* Based on Dr. Enns' recommendation, the District initially contacted Bancroft, NECC, Melmark, Kennedy Kreiger, and the May Institute. AR 2837-39. Bancroft had a six-month waitlist, Melmark had a significant waitlist and did not anticipate openings until September 2022, and NECC was not accepting applications. *Id.* Parents expressed concern about the May Institute, so the District agreed not to pursue that option. *Id.* at 2837. The District continued to reach out to the three RTCs Dr. Enns recommended, along with numerous other RTCs the District identified as possibly being able to meet L.F.'s needs. AR 2836-40.

---

session summary for December 3, 2021 that Parents met with the District to discuss additional supports the District could provide. AR 2786. The note does not reference home-based services, but instead states that Parents were looking at residential settings. *Id.*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### E. L.F.'s Hospitalization in March 2022

On March 20, 2022, Parents admitted L.F. to the Emergency Department ("ED") at Seattle Children's due to his behaviors at home. AR 2356, 3175.

On March 22, 2022, Parents informed District special education administrators, Trisha Craig and Annika Bibby, that L.F. was being boarded in the ED until a bed in the Psychiatry and Behavioral Medicine Unit ("PBMU") became available. AR 3175. Parents asked them to convey the urgency of the situation to Bancroft. *Id.* Parents also said they were asking Kennedy Krieger to prioritize L.F.'s acceptance. *Id.* Ms. Craig responded immediately, expressing sympathy for the family. AR 3175-76. She explained that Ms. Bibby had contacted Bancroft and NECC the previous day and was calling Kennedy Krieger. *Id.* Ms. Bibby reported that Bancroft still lacked capacity, but she would continue checking frequently, and that NECC was still not accepting new enrollments but had L.F.'s information in case that changed. AR 3178. She was awaiting a response from Kennedy Krieger and had left another message that morning. *Id.* She also contacted Seattle Children's to connect with L.F.'s case manager. *Id.*

On March 28, 2022, Parents informed Ms. Craig and Ms. Bibby that L.F. had a difficult week in the ED and had undergone multiple four-person holds, had fecal smearing incidents, and was administered several new emergency medications. AR



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

3179-80. Parents asked them to contact Amego about a potential RTC placement. AR 3180. Ms. Bibby explained that she called Amego and was waiting to hear back and would reach out again the following day. *Id.* That evening, Parents reported that Seattle Children's wanted to discharge L.F. from the ED. *Id.* They asked if there were any ideas about interim services until an appropriate placement was available. *Id.* The next day, Ms. Craig asked if Parents wanted the District to set-up an onsite school program for L.F. AR 3180-81. She offered to meet to discuss what that might look like and explained that she would begin working on a location and staffing. *Id.* Parents stated that an interim program would be great, but that Parents were unsure they could provide a safe home for L.F., so the program would need to be comprehensive. AR 3181. Two days later, L.F. transferred to the PBMU where he remained until April 20, 2022. AR 2356.

On May 5, 2022, the District proposed an interim education program following L.F.'s discharge from the PBMU. AR 2172-74. To develop the program, the District gathered information from the PBMU, reviewed potential locations, held multiple planning meetings to discuss programming, and consulted with two District BCBAs. AR 2174. The District also provided Parents and PBMU staff with a virtual tour of the interim placement. *Id.* Given the behavioral and safety concerns reported, and consistent with Dr. Enns' recommendations, the program was offered on a



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

reduced schedule. AR 2175-76; *see also* AR 2060. The program included three staff members and two on-call staff members who followed a plan developed to address functional communication and tolerance training. AR 2156-61, 2175-76, 2832-35. The District implemented the program through the end of the school year and was able to successfully engage L.F. without any aggression, elopement, or non-compliance. AR 2177-78. The District also provided OT and PT services. AR 2952.

**F. L.F.'s July 2022 Placement at Bancroft**

On July 20, 2022, L.F. was placed in the Lindens program at Bancroft, a 24-hour RTC in New Jersey. AR 2191. At Lindens, L.F. received intensive behavioral interventions from a clinical team that included BCBAs, and individual academic instruction from a special education teacher through a homebound instructional model. *Id.* Bancroft developed a behavior intervention plan ("BIP") to address aggression, property destruction, screaming, and perseveration. AR 2179-81. The BIP provided that the BCBA would make data-based decisions and modifications to the interventions as indicated by the data, and that data collection would be used to evaluate and monitor its effectiveness. *Id.*

On August 16, 2022, L.F.'s IEP team developed a new IEP to reflect his placement at Bancroft. AR 2182-2217. The team reported that L.F. was able to use his AAC device to communicate his wants and needs. AR 2191. The team offered



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

SDI in adaptive/self-help, behavior, cognitive, and social/emotional, along with OT, speech, SLP consultation, PT consultation, and residential placement for 24 hours, seven days per week. AR 2209, 2211-12. The team agreed to focus on addressing L.F.'s behavior regulation and then revisit his need for direct PT. AR 2214. The District agreed to pay Ms. Hill to provide an oral motor therapy training for Bancroft staff, virtual consultation with the Bancroft SLP, and video training modules. AR 2209, 2211-12. The District also agreed to fund eight annual trips for Parents and L.F.'s sibling to visit Bancroft, including airfare, four nights at a hotel, meals, a rental car, and mileage to and from the airport. AR 2211-12.

On September 13, 2022, L.F.'s IEP team met to review and discuss his IEP. AR 2228-59. The team reported that L.F. received 4.5 hours of generalized instruction in the morning and five hours in the afternoon, along with 90 minutes of individual and 60 minutes of group speech services per week, 60 minutes of individual OT per week, and 30 minutes of psychotherapy per week. AR 2258, 2262-



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

63. L.F. also participated in two weekly social skills groups. *Id.* The team did not recommend adding direct PT services at that time.[7] *Id.*

On October 11, 2022, L.F.'s IEP team met to discuss his BIP, which Bancroft reviewed with Parents the week prior and edited based on their feedback. AR 2263-64, 2266-70. The team agreed to implement the BIP, which addressed aggression, disruption, forced urination, disrobing, and refusing to transition. *Id.* The team discussed PT and agreed they needed to first focus on addressing L.F.'s behavioral regulation and would revisit his need for PT once his behavior was regulated. *Id.*

In November 2022, L.F.'s IEP team reported that he had made sufficient progress on his cognitive, adaptive/self-help, and fine motor goals. AR 2789-93. In December 2022, Bancroft updated his BIP to reflect that he was no longer engaging in forced urination and disrobing at clinically significant levels. AR 2271-75.

On February 1, 2023, L.F.'s IEP team met in response to Parents' request to discuss OT, PT, and speech. AR 2276-79. Parents requested that his IEP reflect the minutes offered prior to his placement at Bancroft. AR 2278. The team declined the

---

[7] L.F.'s evaluation recommended PT to address participation with peers in educational activities at school and safety navigating school facilities, which were not applicable in the Lindens program. AR 2109.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

request, explaining that L.F. was at Bancroft to address severe and dangerous behaviors and the primary focus of the program was stabilizing his unsafe behaviors to enable him to be in a less restrictive environment. *Id.* They explained that his IEP included the services they felt were appropriate for his needs at that time. *Id.*

On March 28, 2023, L.F.'s IEP team reported that he had made sufficient progress on his cognitive, adaptive/self-help, and fine motor goals. AR 2789-94.

On June 5, 2023, Parents informed the District that they wanted L.F. to visit home in August 2023. AR 3367. They asked the District to fund roundtrip airfare for both Parents to pick L.F. up from Bancroft, roundtrip airfare for both Parents to take L.F. back to Bancroft, roundtrip airfare for L.F., hotels in New Jersey and Seattle, car rentals, meals while traveling, and mileage to and from the airport. *Id.* The following day, the District agreed to Parents' request to fund a two-week visit home that summer for L.F. AR 2310-11.

In June 2023, L.F.'s IEP team reported that he had met or made sufficient progress on his cognitive, adaptive/self-help, and fine motor goals, and made sufficient progress on three of his communication goals. AR 2789-94, 2798-2801. On August 18, 2023, L.F.'s IEP team reported that he met or made sufficient progress on his cognitive, adaptive/self-help, fine motor, and communication goals. AR 2789-99.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

On September 12, 2023, L.F.'s IEP team developed a new annual IEP for him. AR 2314-49. The team reported that L.F. had made meaningful progress on his speech and language goals. AR 2328. The team offered SDI in adaptive/self-help, behavior, cognitive, and social/emotional, along with 90 minutes of individual and 30 minutes of group speech services per week. AR 2338. The team also offered OT consultation, SLP consultation, PT consultation, a staff training and virtual consultation by Ms. Hill on oral placement therapy. AR 2336, 2338-39. The District continued to agree to fund eight annual family visits to Bancroft, including airfare, four nights in a hotel, a rental car, mileage to and from the airport, and meals. AR 2338-39. The team also developed a new BIP for L.F. AR 2350-54.

In November 2023, Bancroft completed a behavioral assessment and found that L.F.'s aggressive behaviors had decreased by 93% and his disruptive behaviors by 94%. AR 2355-60. Bancroft found that the significant decrease in his challenging behaviors demonstrated the effectiveness of his BIP. AR 2359.

On December 6, 2023, L.F.'s IEP team amended his IEP to provide two annual home visits to help him generalize skills across environments. AR 2384-85, 2387. The District agreed to pay for Parents' airfare and hotel lodging when they accompanied L.F. on flights between home and Bancroft. *Id.* To account for the added home visits, the team reduced the family's annual visits to Bancroft to six. *Id.*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

On January 4, 2024, Parents sent the District a spreadsheet of the anticipated cost of compensatory education they believed they were owed. AR 3813, 3817. The spreadsheet included $637,280 in expenses for services they claimed were not delivered, including over $300,000 for "Residential," over $40,000 for virtual SLP services, and over $140,000 for local SLP services. AR 3817. Parents noted that the spreadsheet did not include all amounts they felt they were owed. AR 3813.

On January 16, 2024, L.F.'s IEP team met to discuss his progress and his OT, PT, and speech. AR 2391-2425. At that time, a search was underway for a new RTC placement because L.F. had met his behavior goals at Lindens and was ready to begin working on re-integration goals. AR 2418. The team updated his IEP to reflect the OT, PT, and speech services they believed L.F. should receive in the new RTC. AR 2414, 2418. The team agreed that because it would be a less restrictive environment, L.F. would require dedicated aide support. *Id.* The team agreed that while he remained in the Lindens program, he would receive the services in his December 2023 IEP amendment. AR 2418.

In March 2024, Lindens reported that L.F.'s aggression had decreased 91%, his disruptive behaviors by 98%, his inappropriate social behaviors by 50%, and his latency to transition by 59%. AR 2814. The next month, the Lindens team



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

determined that L.F. had demonstrated behavioral stabilization. AR 2434. The team created re-integration goals to help prepare L.F. for a less restrictive setting. *Id.*

In June 2024, Lindens reported that L.F. had met all his individualized transition and inappropriate social behavior related integration goals. AR 2824.On August 5, 2024, L.F.'s IEP team amended his IEP to change his placement from the Lindens program to Bancroft School, a less restrictive setting. AR 2436-60. The team agreed that L.F. would receive 60 minutes per week of speech services, 20 minutes per week of PT, and 60 minutes per month of OT. AR 2456, 2459-60. Bancroft explained that in addition to the individual sessions, OT, PT, and speech would be embedded throughout the school day and provided through consultation to help teachers and staff address L.F.'s needs. AR 2459.

On October 4, 2024, L.F.'s IEP team met to develop a new IEP for him following his transition to Bancroft School. AR 2898-2929. The team offered SDI in adaptive/self-help, behavior, cognitive, and social/emotional, along with OT, PT, and speech as related services. AR 2925. The team also offered dedicated aide support, indirect speech/language services, OT consultation, PT consultation, SLP consultation on oral placement therapy while eating, yearly staff training by Ms. Hill, two annual home visits for L.F., and six annual trips to Bancroft for Parents



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and L.F.'s sibling. AR 2923, 2925-26. The team reported that L.F. would be transitioning to a new RTC on November 19, 2024. AR 2928.

In November 2024, Parents sent the District an updated spreadsheet of the anticipated cost of compensatory education they believed they were owed. AR 4997; AR 1415-16, 1430-31 (Father). The updated total included $1,135,656 in expenses for services they claimed were not provided since September 2021. On November 16, 2024, L.F. was discharged from Bancroft and placed at NECC, an RTC in Massachusetts. AR 2942-51.

**G. Due Process Matter**

On September 18, 2023, Parents filed the underlying due process hearing request. AR 1480-1502. Parents raised 17 issues and sought various forms of relief, including continued placement at NECC, compensatory education, reimbursement for educational services, and out-of-pocket medical costs. AR 1848-54. The ALJ conducted a six-day hearing in February and March 2025 and heard testimony from 13 witnesses and considered 95 exhibits. AR 1846-48. On August 13, 2025, the ALJ issued her Findings of Fact ("FF"), Conclusions of Law ("CL"), and Final Order. AR 1846-1976.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

As relevant here, the ALJ awarded 800 hours of compensatory education at a rate not to exceed $150.00 per hour.[8] AR 1973 (CL 198). The ALJ explained that the award represented an "average of 8 hours per week of additional educational services which could reasonably be provided during two consecutive school years, including extended school year ("ESY"), to assist [L.F.] to regain and maintain skills." *Id.* In calculating the award, the ALJ considered that L.F. was in an RTC that Parents specifically chose to address his communication, gross motor, fine motor, self-help, adaptive and cognitive skill deficits. AR 1972 (CL 197). The ALJ gave Parents the discretion to use the 800 hours for the educational services they believed L.F. required, after consultation with his service providers. AR 1973 (CL 198). Although the ALJ believed the compensatory education could be delivered in two consecutive years, she provided Parents with five years to access the services. *Id.* The ALJ also ordered the District to complete a reevaluation of L.F. and develop a new IEP. AR 1973 (CL 201-02). The ALJ denied Parents' remaining requested remedies. AR 1974.

---

[8] Parents' compensatory education spreadsheets included hourly rates for private services that ranged from $76 to $150. AR 3817, 4997.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## III. STANDARD OF REVIEW

Parents bear the burden before this Court on appeal. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) ("As the party seeking relief in this Court, Student bears the burden of demonstrating that the ALJ's decision should be reversed."). In IDEA appeals, "'due weight' must be given to the administrative decision below." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982)). "The amount of deference accorded the hearing officer's findings increases where they are thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995)) (internal quotations and citation omitted). "Whatever deference the ALJ's findings are due, courts should not substitute their own notions of sound educational policy for those of the school authorities which they review." *L.C. on behalf of A.S. v. Issaquah Sch. Dist.*, No. C17-1365-JLR, 2019 WL 2023567, at *12 (W.D. Wash. May 8, 2019), *aff'd sub nom. Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048 (9th Cir. 2022) (quoting *Rowley*, 458 U.S. at 206).

Here, in analyzing the issues and determining appropriate relief, the ALJ heard testimony from 13 witnesses over six days, considered extensive documentary



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

evidence, and issued a 129-page decision detailing the evidence and addressing each identified issue and requested remedy. AR 1846-1974. Parents do not dispute any of the ALJ's factual findings and concede that the ALJ "separately and thoroughly addressed" each alleged IDEA violation. ECF No. 30 at 30, 33. Despite this, Parents contend that the ALJ was "neither thorough or [sic] careful with respect to the relief she granted." ECF No. 30 at 40-41. None of the cases Parents cite support their contention. *J.W.*, 626 F.3d at 440-41 (decision thorough and careful because it included a detailed factual background, discussion of applicable law, and legal conclusions); *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (decision thorough and careful because it included several pages of factual background and analyzed all issues); *M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194-95 (9th Cir. 2017) (decision not thorough and careful because it did not address all issues and disregarded evidence); *Forest Grove Sch. Dist. v. Student*, 665 F. App'x 612 (9th Cir. 2016) (decision not thorough and careful because it lacked a detailed discussion of testimony and failed to consider the record as a whole). Rather, the record demonstrates that the ALJ properly awarded the relief that she determined was appropriate in light of the extensive evidence and testimony before her (none of which Parents challenge).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## IV. ARGUMENT

On appeal, Parents do not challenge the ALJ's findings of fact or legal conclusions regarding the issues raised in the due process hearing. Parents instead challenge only the ALJ's ordered relief. Under the IDEA, appropriate relief is designed to ensure that disabled students are appropriately educated within the meaning of IDEA. *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1497 (9th Cir. 1994). Compensatory education is an equitable remedy, not a contractual one. *Id.* Generalized awards of compensatory education are inappropriate and "[t]here is no obligation to provide a day-for-day compensation for time missed." *Id.* ALJs have the authority to determine appropriate relief. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 n.12 (2009).

Consistent with that authority, the ALJ awarded 800 hours of compensatory education at an amount <u>not to exceed</u> a maximum hourly rate of $150.00. AR 1973 (CL 198). The award was based on the ALJ's determination regarding the amount of additional educational services that L.F. could reasonably access during two consecutive school years. *Id*. The ALJ's calculation took into account that L.F. was enrolled in an RTC that Parents specifically chose to address his communication, gross motor, fine motor, self-help, adaptive, and cognitive needs. AR 1972 (CL 197). Despite determining the awarded compensatory education could be accessed in two



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

years, the ALJ provided Parents with five years to access the services. AR 1973 (CL 198).

Significantly, Parents do not challenge the amount of compensatory education awarded. Parents instead contend that the ALJ erred in three respects. First, they contend the ALJ erred in not awarding transportation and lodging expenses for certain providers to deliver compensatory services, but they fail to establish such expenses are necessary or appropriate under the IDEA. Second, Parents allege that the ALJ erred in providing a five-year timeline for the compensatory education, yet they provide no legal authority to support their contention that the services should be available indefinitely. Third, Parents claim that this Court should monetize the compensatory education award and order the District to place a minimum of $206,048.44 in a third-party special needs trust ("SNT") or escrow account, along with $6,000 to establish and maintain the account. Parents contend that they should be given unfettered access to the funds over which the District would have no oversight. Parents have failed to meet their burden of establishing any error in the ALJ's determination regarding appropriate relief.

## A. Parents Are Not Entitled to Funds for Transportation and Lodging.

Parents first contend that the ALJ erred in failing to order the District to fund transportation and lodging expenses for L.F. and any service providers in order to



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

access the compensatory services. ECF No. 30 at 38-45. Parents claim that such expenses are a "related service" under the IDEA that are somehow required for L.F. to access the awarded compensatory education. *Id.* Although Parents appear to fault the ALJ for not considering such a request below, ECF No. 30 at 26, they fail to establish that they meaningfully sought such relief before the ALJ. Instead, Parents cite to a single sentence in their post-hearing brief stating that any compensatory education award should include District funding of travel costs for Parents to take L.F. to access the services or to bring providers to L.F.'s location. AR 1800. Having failed to meaningfully raise their claim below, Parents cannot claim that the ALJ erred in failing to award some remedy they only now deem the IDEA requires.

Setting aside their failure to raise this issue below, before this Court, Parents provide no legal authority to support their contention that transportation and lodging costs <u>for service providers</u> are a "related service" under the IDEA. They further fail to identify any evidence establishing that there are insufficient local providers who can deliver the awarded compensatory education, or that L.F. could not remotely access services from their preferred providers, such that it is necessary for either them or L.F. to travel to or from Texas and the United Kingdom ("U.K."). While Parents may want funding for out-of-state and out-of-country providers, that does not establish the ALJ erred in not awarding such relief.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Under the IDEA, a student's IEP must include any related services the student requires to receive a FAPE. 34 C.F.R. § 300.320(a)(3); Wash. Admin. Code § 392-172A-03090(1)(d). The IDEA defines "related services" as "transportation and such developmental, corrective, and other supportive services" that a student requires to benefit from their special education services.[9] 34 C.F.R. § 300.34(a); Wash. Admin. Code § 392-172A-01155. Transportation as a related service includes travel "to and from school and between schools" and "in and around school buildings," as well as specialized equipment, such as special or adapted buses, lifts, and ramps. 34 C.F.R. § 300.34(c)(16); Wash. Admin. Code § 392-172A-01155(2)(p). The definition of "related services" does not include travel for service providers. While "lodging" is also not a related service, school districts must provide room and board for students who require a residential educational program. 34 C.F.R. § 300.104; Wash. Admin. Code § 392-172A-02010.

Parents argue that the ALJ erred in not awarding transportation and lodging expenses because L.F. is placed at an RTC, his IEPs included transportation, and the

---

[9] In addition to transportation, related services include OT, PT, speech services, audiology, counseling, orientation and mobility, and other supportive services. 34 C.F.R. § 300.34; Wash. Admin. Code § 392-172A-01155.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ALJ was "keenly aware" he required transportation as a related service to access his IEP services. ECF No. 30 at 34, 38-39. Parents' argument misses the point. The District does not dispute that L.F. requires transportation as a related service to access his IEP services at NECC, as well as lodging. Consistent with that, L.F.'s IEPs provided full-time residential placement at and transportation to NECC. *See* AR 2211-12, 2307-08, 2338-39, 2384-86, 2414-17, 2456-58. That, however, does not establish that L.F. requires additional transportation and lodging to access the compensatory education the ALJ awarded, which could be delivered by local providers. Further, Parents fail to identify any authority identifying transportation of service providers as a related service, nor does the IDEA contemplate as such. *See* 34 C.F.R. § 300.34; Wash. Admin. Code § 392-172A-01155. Even were Parents able to establish that transportation of service providers is a related service under the IDEA, they offer no evidence that such services are somehow necessary for L.F. to access the compensatory education award. In the absence of any evidence that local providers are unavailable to deliver these services, or that L.F. cannot virtually access services from Parents' preferred providers (as he has consistently done over the years), Parents cannot establish that the ALJ erred in not concluding that transportation costs were a necessary related service to access her ordered compensatory service award.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Parents further contend that the ALJ "failed to review the testimony" and consider her own findings regarding L.F.'s need for transportation to receive in-person compensatory education. ECF No. 30 at 41. Yet Parents cite no testimony the ALJ allegedly failed to consider. And the factual findings they cite describe the services in L.F.'s June 2021, January 2022, September 2022, and June 2023 IEPs and services he received at DBS and Bancroft. None of the factual findings identify or establish that L.F. requires transportation to receive the compensatory services. Despite this, they then argue in conclusory fashion that it "logically flows that if a student requires related services to access services, then the ALJ must order related services so that [L.F.] can *actually* access the compensatory services." *Id.* (emphasis original). Parents further argue that awarding compensatory education a student cannot access is "an absurd result," but offer no evidence to establish that L.F. cannot access the compensatory services from appropriate providers without the need for travel. *Id.*

Parents similarly argue that because the ALJ's decision is "silent" as to an award of transportation as a related service, the compensatory services are "mostly useless." ECF No. 30 at 42. Parents again cite no record evidence to support their contention. They instead claim that because the ALJ stated that the compensatory services could be provided "at any location," this Court should award travel



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

expenses for the providers to come to L.F. ECF No. 30 at 42-43. Rather than establishing the unavailability of local providers, Parents contend that Ms. Hill traveled from Texas multiple times to support L.F. and that the ALJ pointed to Ms. Hill's report detailing the need for in-person training and support with "someone like Ms. Hill." ECF No. 30 at 26, 39. Parents argue that this Court should therefore award them the cost of airfare and lodging for Ms. Hill to travel from Texas to deliver speech services, given her "extensive experience" with L.F. *Id.* at 42-43. Yet as the ALJ noted, Ms. Hill recommended that L.F. receive services <u>from a local SLP</u> and offered to assist in training and providing virtual consultation with that SLP.[10] AR 1878 (FF 91); AR 3170. Ms. Hill testified that she had only seen L.F. in person approximately three or four times in four years. AR 547-48 (Hill). And as Parents acknowledge, while L.F. was at DBS and Bancroft, Ms. Hill delivered services <u>virtually</u> with an on-site provider implementing the therapy. ECF No. 30 at 40; AR 2328, 2446, 2830, 3168; AR 529-32 (Hill). So, even if Parents wanted to use the

---

[10] L.F.'s IEPs include Ms. Hill's training and virtual consultation, so compensatory education funds are not necessary to access those services. *See*, e.g., AR 2336, 2338, 2923, 2925-26.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

compensatory education for additional services from Ms. Hill, transportation and lodging are unnecessary for her virtual services.

Parents similarly contend that this Court should order the District to pay airfare and lodging expenses for Risca Soloman and Sarah Denison, providers based in the U.K., to deliver in-person services in Massachusetts or for L.F. to travel to the U.K. to receive services.[11] ECF No. 30 at 43. Parents argue that Ms. Soloman and Ms. Denison traveled from the U.K. once to assess L.F. and provide support.[12] ECF No. 30 at 27. Yet, as with Ms. Hill, all other support they provided was delivered remotely. AR 772-73 (Soloman), 826 (Denison). When asked about potential prospective support, Ms. Denison testified that it could include attending video conferences and providing Parents with guidance on skill building and supporting L.F. in the community. AR 844-45 (Denison). Neither Ms. Soloman nor Ms. Denison testified about the prospect of traveling from the U.K. to deliver in-person services to L.F. Nor is there any evidence to establish the appropriateness, much less necessity, of flying L.F. to the U.K. for such services.

---

[11] Ms. Hill referred Parents to Ms. Soloman and Ms. Denison. AR 769-71 (Soloman).

[12] Ms. Soloman and Ms. Denison were in Philadelphia for a conference, so they stayed two extra days to meet L.F. in person. AR 772 (Soloman).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Further, the fact that private providers traveled to deliver certain in-person services does not establish there are no local providers qualified to deliver the compensatory education. Indeed, almost all the services L.F. has received for the duration of this matter have been delivered by local providers. Notably, Parents' calculations of the compensatory education costs they felt they were owed included local and virtual SLP services, OT, and PT and did not include any travel expenses. AR 3813, 4997. And while L.F. was in the Lindens program, Parents paid local providers to deliver services to him, thus establishing the availability of such providers. AR 1118-19, 1184 (Wertz); AR 1399-1400 (Father); AR 2343. Similarly, any contention that there are no qualified providers near NECC, which is located 30 minutes outside of Boston, is not compelling.

Parents next argue that L.F. previously traveled to Texas to access services from Ms. Hill, which they claim is "exactly the type of access this remedy was intended to provide but failed to thoughtfully operationalize." ECF. No. 30 at 44. To support their argument, they cite testimony that L.F. flew to Texas once in 2019 to receive services from Ms. Hill. *Id.* Parents do not cite any portion of the ALJ's decision that supports their claim that the ALJ somehow intended to provide the remedy they now seek. Rather, it stands to reason that if the ALJ intended the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

compensatory education to include District funding for L.F. to travel across the country to receive services, she would have ordered that this occur.

Despite citing no supporting legal authority or record evidence, Parents argue that this Court should award L.F. transportation costs, including airfare and car rentals or ride-shares, lodging, and meals so out-of-state and out-of-country providers can travel to L.F. or he can travel to them. ECF No. 30 at 44-45. Parents alternatively suggest that the Court can order Parents to submit receipts to the District for reimbursement for such costs. *Id.* Parents had the burden of proving the ALJ erred by not ordering the District to use public funds, which are already limited, to pay travel expenses for private providers or L.F. to fly across the country or internationally to receive services that could be delivered by local providers. Parents failed to meet that burden.

**B. The ALJ's Five-Year Compensatory Education Timeline is Reasonable.**

Parents next challenge the five-year timeline the ALJ provided for Parents to access the compensatory education. ECF No. 30 at 42, 45. Parents' argument is limited to three conclusory sentences, which claim the ALJ's decision to place a temporal limitation on the compensatory education was neither thorough nor careful



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and that the selected end date was arbitrary.[13] *Id.* Parents do not cite any legal authority to support that notion, and the cases they do cite do not address compensatory education at all, let alone temporal limitations. *Id.* at 45 (citing *J.W.*, 626 F.3d at 440-41 and *Forest Grove*, 665 Fed. App'x at 613-14).

To the extent the Court elects to consider Parents' claim despite the lack of any meaningful argument or authority, Parents cannot meet their burden of establishing the ALJ erred. Contrary to Parents' conclusory claim, the ALJ's five-year timeline was not "arbitrary." The ALJ instead determined that L.F. could reasonably access the compensatory education within two consecutive years, but allowed Parents five years—2.5 times that amount of time—to access the services. AR 1973 (CL 198). Compensatory education is intended to make up for missed educational services and place the student in the position they would have been in had those services been provided. *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011). L.F. was 15 when the ALJ issued her decision, giving Parents until he is 20 years old to access the compensatory education intended

[13] The section of Parents' brief that purportedly addresses the five-year timeline instead consists almost entirely of argument related to travel expenses, which is addressed above. ECF No. 30 at 42-45.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to ensure he is appropriately educated under the IDEA. *See Puyallup*, 31 F.3d at 1497 (appropriate relief is designed to ensure that disabled students are appropriately educated within the meaning of IDEA). Parents argue that there should be no time limitation, which would allow them to access services when L.F. is in his 30s, 40s, or beyond. That position undermines the purpose of compensatory education and the intent of the IDEA. Having failed to identify any evidence or authority to challenge the ALJ's determination that a five-year window was sufficient for L.F. to access the awarded compensatory services, Parents cannot meet their burden of establishing the ALJ erred.

**C. Parents' Request for a Monetary Award Should be Denied.**

Parents lastly ask the Court to "monetize" the ALJ's award of compensatory education and order the District to place a minimum of $206,048.44 of public funds in a third party SNT or escrow account over which the District has no control. ECF No. 30 at 45-49. While not labeled as such, Parents are essentially requesting a monetary payment as an award for IDEA violations. The IDEA does not permit such a remedy. *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir. 2007); (monetary damages are not available under the IDEA); *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999) (same); *C.O. v. Portland Pub. Schs.*, 679



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

F.3d 1162, 1166 (9th Cir. 2012) (stating that "the IDEA creates a 'comprehensive enforcement scheme' in which compensatory damages play no part").

To support their argument, Parents contend that courts have used SNTs or escrow accounts to distribute funding for compensatory education. ECF No. 30 at 45-46. Two of the cases Parents cite merely granted court approval of a settlement between the parties establishing an SNT. *J.J. by & through Tyler A. v. Rocklin Unified Sch. Dist.*, No. 2:19-CV-01404-KJM-DB, 2020 WL 363908 (E.D. Cal. Jan. 22, 2020) (court approved settlement of non-IDEA claims that included a SNT)[14]; *D.C. by & through Murphy v. Modesto City Schs.*, No. 1:22-CV-01481-HBK, 2023 WL 6060044 (E.D. Cal. Sept. 18, 2023) (court approved settlement that included a SNT). No such settlement exists here.

The cases Parents cite that did involve the creation of an SNT are distinguishable. In *J.R. by & through Perez v. Ventura Unified Sch. Dist.*, No. 2:22-CV-02717-HDV-MAR, 2024 WL 5339859 (C.D. Cal. Dec. 23, 2024), the court ordered a district to provide compensatory education through an SNT because the

---

[14] The parties' settlement of the IDEA claims did not include an SNT. *Id.* at *2.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

student's family had relocated out-of-state.[15] Similarly, in *J.C. ex rel. J.C. v. Vacaville Unified Sch. Dist.*, No. S-05-0092-FCD-KJM, 2006 WL 2644897 (E.D. Cal. Sept. 14, 2006), the court ordered the district to place compensatory education funds in a SNT because the student's family moved outside the district. And in *Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411 (2d Cir. 2010), the court ordered the district to open an escrow account to provide compensatory funds for a student who graduated eight years prior. Finally, in *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649 (2d Cir. 2020), the district court ordered the district to provide compensatory education through an escrow account because the student was graduating high school and would be attending college. In each of these cases, the school district at issue had no ongoing obligation to serve the student entitled to the compensatory services. Here, in contrast, Parents continue to reside in the District and the District remains the entity responsible for L.F.'s education.

---

[15] The district challenged the court's order of an SNT on appeal, but because the Ninth Circuit found the parents' claims were time-barred it did not reach this issue. *J. R. by & through Perez v. Ventura Unified Sch. Dist.*, 173 F.4th 1039, 1059 (9th Cir. 2026).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

As such, the logistical reasons for ordering an SNT or escrow account in the above cases are not applicable here.

Further, other courts' use of an SNT or escrow account for compensatory education does not establish that the ALJ erred by declining to order one here. Parents assert that an SNT is necessary because the "record demonstrates that the District has a history of creating barriers to compensatory education owed to [L.F.]." ECF No. 30 at 46. To support this claim, Parents rely solely on Father's testimony that the District imposed "roadblocks" to using past compensatory education funds, and that the District has not shown it is "competent" to manage funds to support L.F.[16] AR 1349-50 (Father). Parents, however, identify no such "roadblocks" and

[16] At hearing, Parents offered evidence that the District did not reimburse them for certain travel expenses that they believed should have been paid. AR 5020-92; AR 1417 (Father). This included expenses related to a May 2024 trip to NECC (before L.F. attended), a car rental and hotel in Cleveland (for a personally planned trip to a different RTC), and $936.60 for meals from a 2022 trip to Texas (to see Ms. Hill), including non-itemized receipts for $98.08 from a Mexican restaurant, $185.78 from a steak and sushi restaurant, and $133.08 from a bar and grill. AR 5020-50, 5059, 5064. To the extent Parents intend to argue this demonstrates some inability on the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

cite no credible evidence that the District cannot competently manage compensatory education funds. To the contrary, the District has funded L.F.'s out-of-state RTC placements since July 2022 and reimbursed Parents for services and travel expenses. AR 1119, 1266, 1289 (Wertz). Parents only claim to the contrary is that the District purportedly failed to pay Ms. Hill for six months, requiring Parents to pay her to avoid interrupting her remote services. ECF No. 30 at 47. A District administrator, however, testified that she knew of no instance in which the District failed to pay Ms. Hill and that any nonpayment would have been due solely to missing invoices from Ms. Hill. AR 1037 (Wertz).

Parents have failed to meet their burden of establishing that the ALJ erred in declining to require the District to monetize L.F.'s compensatory education award or to place it in a trust over which the District has no oversight or control. Parents further fail to provide any credible evidence that the District is unable to manage the delivery of the compensatory education services the ALJ awarded, or to reimburse

---

District's part to manage L.F.'s compensatory education going forward, any such claim fails on its face.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Parents for services they privately obtain consistent with the ALJ's decision. The ALJ's remedy award should be upheld.

## V. CONCLUSION

The ALJ's remedy award is consistent with the IDEA, and Parents have failed to present any authority to the contrary. The District respectfully requests that the Court affirm the ALJ's reasoned determination of appropriate relief and reject Parents' request to fund private travel, an unlimited time window to access services, as well as a monetary award of over $200,000 of public funds for compensatory education.

DATED this 30th day of October, 2026.

PACIFICA LAW GROUP LLP

By: *<u>/s/ Sarah C. Johnson</u>*
Sarah C. Johnson, WSBA #34529
Susan Winkelman, WSBA #49544
*Attorneys for Defendant*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF.

DATED this 30th day of October, 2026.

Grace McDonough



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750